Josiah King, Garnishee, Plff. in Err., v. William Beeson.

Fraud must not be presumed, but may be inferred from facts and circumstances.

Where a debtor, with intent to delay or defraud his other creditors, has a promissory note for money due him, made payable to a creditor who is a party to the fraud, the note is, as against the other creditors, void, and they are entitled, in proceeding by attachment execution, to the debt for which the note was given.

The questions whether the transaction was for the purpose of delaying or defrauding creditors, and whether the payee of the note was a party to the fraud, are for the jury.

The record of a suit begun by the payee against the makers of the note is not admissible in evidence to show the bona fides of the transaction.

(Argued January 31, 1887. Decided February 14, 1887.)

July Term, 1885, No. 117, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. Error

NOTE.—For the effect of fraud as to other creditors, see note to Nusbaum's Appeal, 1 Sad. Rep. 106.

to the Common Pleas of Fayette County to review a judgment
on a verdict for the plaintiff in an attachment execution.
Affirmed.

The facts as they appeared at the trial before INGHRAM, P. J.,
were stated in his charge to the jury, which was as follows:

It appears from the evidence in this case that William Beeson,
the plaintiff, obtained a judgment on the 22d day of September,
1881, against James Lynch and Henry Lynch, for $750, and
that on the next day, September 23, 1881, Mr. Beeson, claiming
that Dempsey Strickler and Richard Boyd were indebted to
James Lynch, issued an execution attaching what he claimed to
be the indebtedness of Strickler and Boyd to James Lynch, and
this attachment execution was served on Dempsey Strickler and
Richard Boyd on the 24th day of September, 1881. They filed
their answers to the interrogatories on the 27th day of January,
1883, and a plea of *nulla bona* was entered for them, which put
the matter at issue between the parties, and you are now to deter-
mine whether, on the 24th day of September, 1881, the date of
the service of the attachment execution, or the time when the
attachment execution was served on Dempsey Strickler and
Richard Boyd, they were indebted to James Lynch in any
amount, and, if so, in what amount and on what account.

The plaintiff has offered in evidence the record of his judg-
ment at No. 34 of December term, 1881, and also the record of
the issuing of the attachment execution. He has also offered
Dempsey Strickler and Richard Boyd as witnesses, and claims
to have shown by the testimony of Dempsey Strickler, who, I
believe, was the first witness, that in 1876, in October, I believe,
Strickler and Boyd borrowed from James Lynch the sum of
$700 and gave a note for the amount, which note, at the request
of Lynch, was made payable to Mrs. Lynch, the wife of James
Lynch; that that note remained in the hands of Mrs. Strickler,
the wife of Dempsey Strickler, for some time; that during the
time the note remained in her hands, the plaintiff claims that
Strickler and Boyd made payments to James Lynch in different
ways—in cash, bacon, house rent and perhaps in other ways;
and the matter ran on, it is claimed by the plaintiff, until the
year 1878, when James Lynch came and took up the note in the
hands of Mrs. Strickler and went to the parties owing the money,
Dempsey Strickler and Richard Boyd, and a statement was

made between them,—the amounts of the payments counted up and the amount over that taken out of the $700 note and its interest, and that there still remained due to James Lynch the sum of $400, due on the note.

It is further claimed on the part of the plaintiff, that Strickler and Boyd, in 1878, the date of the note, gave their note for the balance due, about $400, but that then the note was made payable to Josiah King, and that they then gave their note to Josiah King for $400, which the plaintiff claims was the balance due to James Lynch from Strickler and Boyd, on the $700 note. It is claimed on the part of the plaintiff that this note was still in the hands of James Lynch from the time it was given, in 1878, until the issuing of this attachment execution or the service of the attachment execution on the 24th of September, 1881.

It is also claimed on the part of the plaintiff that Strickler and Boyd had not paid it, and that the note was still outstanding and due from Strickler and Boyd at the time of the service of the execution; and it is claimed that it was due to James Lynch, although the payee in the note was Josiah King; and that, being still due from Strickler and Boyd at the date of the service of the attachment, on the 24th of September, 1881, the plaintiff claims he has a right to recover in this action whatever was due from Strickler and Boyd on that note, if there was anything due, on the 24th of September, 1881.

It is further claimed on the part of the plaintiff, that at the time the note was renewed, or the $700 note taken up and the $400 note given, James Lynch gave as a reason why he wished the name of the payee changed from Phœbe Lynch, his wife, to Josiah King, that he did not wish William Beeson to know where the money was.

It is claimed further on the part of the plaintiff that the $700 that Strickler and Boyd borrowed from Lynch was the money that Lynch had received from the sale of a saw-mill, which, it is claimed on the part of the plaintiff, Lynch had bought from William Beeson, and that he was still indebted to Beeson for the purchase money on the saw-mill. It is claimed by the plaintiff that at the time the negotiations were going on, Mr. Lynch told Strickler and Boyd that that was where he had received the money from, but claimed to have given Mr. Beeson a mortgage to secure it, and that he did not wish this money to go in payment of that; that he wished to use it to live on; and it is claimed

that the testimony of Richard Boyd and Dempsey Strickler goes to show that at the time they borrowed the money, that was where the money came from, and that Lynch gave as a reason why he wished it placed in the name of his wife and afterwards in the name of Josiah King, that he did not wish the money to go to his creditors, Mr. Beeson being one of them; and it is claimed on the part of the plaintiff that the money, although in the first instance made payable to Phœbe Lynch and afterwards to Josiah King, was, notwithstanding that fact, still the money of James Lynch; and being so, and due from Strickler and Boyd at the date of the service of the attachment execution, on September 24, 1881, the plaintiff is now entitled to recover the amount of the note and its interest, it still being less than the amount of the judgment recovered by Mr. Beeson in 1881.

On the part of the defendants it is not denied that Mr. Lynch did buy a saw-mill from Mr. Beeson; and it is not denied that he gave two judgment notes of $750 each, amounting in the whole to $1,500; and it is not disputed that the attachment execution was issued and served as claimed by the plaintiff, on the 24th of September, 1881.

But on the part of the defendants—Mr. King now being one, having been placed on the record as a claimant of this fund—it is claimed that the plaintiff is not entitled to recover, for the reason that at the date of the $400 note, in 1878, it is claimed by the defendants that James Lynch was indebted to Josiah King in a much larger amount than the $400.

It is also claimed by the defendants that James Lynch, in having the note made payable to Josiah King instead of Phœbe Lynch, as it had been originally, was doing so for the purpose of handing the note over to Josiah King in payment of what the defendants claim was Mr. Lynch's indebtedness to Josiah King, or in part payment of it.

It is claimed that for many years prior to the date of the note, James Lynch had been indebted to Josiah King. They are brothers-in-law; and it is claimed that James Lynch has not been in very good health and has required assistance at different times, and that Josiah King was able and willing to assist him, and did assist him at different times, and that at that date James Lynch was indebted to Josiah King in a much larger amount than the amount of the note, and that the note was given to him in part payment of what was due him; and it is claimed by the

defendants that soon after the date of the note, it was handed over to Josiah King in payment or part payment of that indebtedness, and that being so, that the note became the property of Josiah King, and that, at the date of the service of the attachment execution on September 24, 1881, there was really nothing in the hands of Strickler and Boyd due to James Lynch, but whatever was due on that note was due to Josiah King and not to James Lynch.

It is further claimed on the part of the defendants that the testimony of James Lynch and Josiah King goes to show that, in the dealings between the parties, in the sale of real estate, in the advancement of money, and in different ways, James Lynch was actually indebted to Josiah King, and that, being so indebted, he had a right to pay him by assigning him this note, or have the note made payable to him, or in any other way that he might be able to do it; and it is claimed on the part of the defendants that he did, in part payment of the indebtedness, transfer this note to him, or have it made payable to him, and that the money was then due to King instead of to Lynch, and that therefore there was nothing due from Strickler and Boyd to James Lynch at the date of the service of the attachment execution, and the plaintiff has no right to recover in this action.

You have heard the testimony in regard to the dealings—the farm transaction, and the Cote judgment paid by Mr. King, and the sale of the farm to Bell, and the taking of the mortgages, and the assignment of the mortgages from Lynch to King—all of these are matters for you to take into consideration.

We will not take the time to go over them.

You have heard the testimony and the comments of counsel, and if you should find from the evidence in the case that, at the date of the service of the attachment execution on Strickler and Boyd on the 24th of September, 1881, there was in the hands of Strickler and Boyd any sum of money due to James Lynch upon this note or otherwise (this note seems to be the only matter in controversy), then the plaintiff would be entitled to a verdict at your hands, for whatever you find was due from Strickler and Boyd to James Lynch at that date. But if you should find, from the evidence, that, at the date of the service of the attachment, there was nothing due from Strickler and Boyd to James Lynch, then there would be nothing due now, and the verdict should be for the defendants.

Of course, the jury will understand that whatever the transactions were, or were claimed to be, the plaintiff claims they were fraudulent; that Lynch and King are brothers-in-law, and that whatever was done by them was done for the purpose of defrauding the creditors of Lynch. Of course, the jury will understand that this involves the character of the persons alleged to have been parties to the transaction; but the jury must not come to the conclusion that there was fraud, except upon evidence that is clear and positive. Fraud is not to be presumed, but it is not necessary that there should be direct evidence of fraud. It is sufficient if one party has shown such a state of facts and circumstances as leads the jury to no other conclusion than that the other party has been guilty of fraud. They have a right to draw the inference from these facts and convict the party of fraud; but they are not to presume fraud from some circumstances in the case that are unusual or extraordinary.

If you should find from the evidence that there was anything due from Strickler and Boyd to James Lynch at the date of the service of the attachment execution, you can set forth the amount, and also the amount coming to the plaintiff on his attachment execution. [On the part of the defendants we are requested to instruct you: "That even if James Lynch was indebted to Beeson and others, and notwithstanding that Lynch may have intended the assignment of the Strickler and Boyd money to hinder, delay, and defraud his creditors, the verdict must be for the defendants, unless it has been proved that Josiah King knew of such fraudulent intent on the part of Lynch and assented thereto."

In answer to that point, we say to you that if James Lynch was indebted to both William Beeson and Josiah King, and assigned the Strickler and Boyd money to King for the purpose of paying his (Lynch's) indebtedness to King, then, even if Lynch did this with the intent upon his part to hinder, delay, and defraud his creditors—William Beeson, the plaintiff, being one of them—the verdict must be for the defendant, unless Josiah King was also a party to such fraudulent intent, and was aiding and assisting Lynch in his attempt to defraud his creditors. As explained, that point is affirmed. Of course, there must be a combination between the two to perpetrate a fraud. It does not matter what James Lynch's intention may have been. If he was indebted to Josiah King and assigned the note to Jo-

siah King with the intent upon his (Lynch's) part to defraud his creditors, unless Josiah King was a party to the fraud, he would not be bound by it. He must be a party to it before it can affect him. The jury will remember the evidence, no doubt, of the witnesses to the transaction between Strickler and Boyd and James Lynch. They don't seem ever to have had any conversation with Josiah King about the matter until after the service of the attachment execution, or until after the date of the $400 note, when Mr. King applied to them and had some conversation about it. You will remember what James Lynch, or what it is claimed on the part of the plaintiff the witnesses testified was the reason why Lynch wanted the money made payable first to his, Lynch's wife, and then afterwards to King. It is claimed on the part of the plaintiff that the testimony shows that at one time James Lynch stated that he had owed Josiah King $152, but that he had paid him by the assignment of a mortgage on the Laurel Run property, or something to that effect. No doubt a calculation will be sent out with you; and if you find it to be correct under the evidence in the case, you can adopt it as your own; and if not, and you find for the plaintiff, you can make one for yourselves.]

During the trial the defendant King offered to prove by the record of a suit, by him against Dempsey Strickler and Richard Boyd, that the ownership of the money in dispute was in him, as against them. The court overruled the offer.

The verdict was for the plaintiff.

The assignments of error specified the portion of the charge inclosed in brackets, and the rejection of the testimony offered.

*Edward Campbell,* for plaintiff in error.—The dishonest intentions of a vendor of goods will never vitiate the sale as to his creditors, unless knowledge thereof is brought home to the purchaser. Reehling v. Byers, 94 Pa. 316; Hapgood v. McIntosh, 42 Phila. Leg. Int. 416.

A creditor is not acting wrongly when he receives payment or takes security for his debt, although he knows that other persons who have the same right with himself may be less vigilant or less fortunate. The act being right, no secret feeling can change its character. Indeed, it may be said that the motive which results in proper action cannot be bad. Lake Shore Banking Co. v.

Fuller, 110 Pa. 156, 1 Atl. 731; Covanhovan v. Hart, 21 Pa. 495, 60 Am. Dec. 57.

It was error to submit the case to the jury. Duncan v. Madara, 16 W. N. C. 91; Wade v. Fahrig, 41 Phila. Leg. Int. 378.

*Boyle & Mestrezat,* for defendant in error.—The verdict, in effect, declares that King was a party to Lynch's fraud.

The case of Reehling v. Byers, 94 Pa. 316, sustains the instructions given by the court below to the jury. The plaintiff knew that to affect King he must bring home to him a knowledge of and participation in Lynch's fraud. He produced relevant testimony for this purpose and its weight and sufficiency was for the jury. Abbey v. Dewey, 25 Pa. 413; Kaine v. Weigley, 22 Pa. 183.

In cases of fraud much latitude in the evidence is allowed. The only true test is whether the evidence can throw light on the transaction, or whether it is totally irrelevant. Pfeil v. McCallin, 1 Sad. Rep. 252; Heath v. Page, 63 Pa. 126, 3 Am. Rep. 533.

Fraud, like any other act, may be proved by circumstances; and when the circumstances are of such a character as to lead to the inference that there has been a fraudulent intent, the *onus* of disproving fraud rests on the parties to the transaction. Zimmer v. Miller, 64 Md. 296, 1 Atl. 858.

After showing the relationship between Lynch and King and their collusive acts and conduct, it was competent for the plaintiff to show the declarations of Lynch as affecting King. Jackson v. Summerville, 13 Pa. 359; Covanhovan v. Hart, 21 Pa. 495, 60 Am. Dec. 57; Hartman v. Diller, 62 Pa. 37; Crawford v. Ritter, 1 Pennyp. 29.

To make declarations of one party competent evidence against another, there must be some evidence of a common purpose or design; but a very slight degree of concert or collusion is sufficient. McDowell v. Rissell, 37 Pa. 164.

Per Curiam:

The main questions in this case involve a conflict of evidence, and the credibility of witnesses. We see no error in the charge of the court nor in the exclusion of evidence. The case was well submitted.

Judgment affirmed.