**Walter L. MORGAN, Plaintiff–Appellant,**

**v.**

**Louis W. SULLIVAN, Secretary of Health and Human Services,\* Defendant–Appellee.**

No. 88–4075.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 28, 1989.

Decided Sept. 23, 1991.

---

\* Louis W. Sullivan is substituted for his predecessor Otis R. Bowen, Secretary of Health and Human Services, pursuant to Fed.R.App.P. 43(c)(1).

Ralph Wilborn, Eugene, Or., for plaintiff-appellant.

Richard H. Wetmore, Asst. Regional Counsel, Dept. of Health and Human Services, Kathryn A. Warma, Asst. U.S. Atty., Seattle, Wash., for defendant-appellee.

Before FERGUSON, BRUNETTI and O'SCANNLAIN, Circuit Judges.

## ORDER

The opinion filed July 13, 1990, 908 F.2d 1426, is withdrawn.

## OPINION

PER CURIAM:

Walter Morgan appeals from the district court's decision upholding the determination of the Secretary of Health and Human Services ("Secretary") that he is not entitled to disability insurance benefits. We affirm in part and reverse and remand in part.

### I. Facts and Proceedings Below

Morgan was born October 29, 1924, and partially completed the third-grade. His relevant work experience has been as a truck driver and logger, but he has not been gainfully employed since 1977. On Nov. 30, 1981 he applied for disability benefits, alleging back and heart ailments. The application was denied initially and on reconsideration. Morgan filed for disability and Supplemental Security Income ("SSI") Insurance benefits on August 22, 1984, which were also denied. Morgan appealed. On June 11, 1985, an Administrative Law Judge ("ALJ") found Morgan eligible for SSI benefits as of July 25, 1984, because of subsequent mental impairments, but denied the disability benefits on the grounds that Morgan was not disabled on or before December 31, 1979, the date he was last insured for disability benefit purposes. Morgan appealed the ALJ's determination.

The Appeals Council remanded the case for reconsideration under the Reform Act of 1984. On remand, a different ALJ came to the same decision as the first ALJ. Morgan appealed this decision. The Appeals Council affirmed the award of SSI benefits beginning July 25, 1984 but issued its own decision denying the disability claim. The Appeals Council found the conclusions of Morgan's treating physicians that he was disabled to be inconsistent with the medical evidence, and it made the following findings:

> The claimant had the following impairment on and prior to December 31, 1979: status post bilateral hernia repair, but did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4, at any time on or before December 31, 1979.

> The claimant had no medically determinable mental impairment at any time on or before December 31, 1979, when he last met the special earnings requirements.

> The claimant's subjective complaints of pain in his chest, heart, right knee and both hips are credible only to the extent that his history of bilateral hernia repair would have prevented him from performing greater than medium work at any time on or before December 31, 1979.

On the basis of these findings the Appeals Council determined Morgan was not disabled prior to December 31, 1979, his last insured date, because he was capable of performing his past relevant work as a truck driver. Morgan appeals.

### II. Discussion

#### A. *Physical Disability Claim*

■ In order to obtain disability benefits, Morgan must demonstrate he was disabled prior to his last insured date. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.1520. Morgan's last insured date was December 31, 1979. The burden of proof on this issue is on the claimant. *See Gamer v. Secretary of Health and Human Services*, 815 F.2d 1275, 1278 (9th Cir.1987). The Secretary's decision to deny benefits " 'will be disturbed only if it is not supported by substantial evidence or it is based on legal error.' " *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433

(9th Cir.1988) (quoting *Green v. Heckler,* 803 F.2d 528, 529 (9th Cir.1986)).

Morgan claims to have suffered a broken spine in 1960, and he apparently underwent a laminectomy at that time. On December 15, 1977, he was hospitalized for repair of bilateral inguinal hernias. He was discharged on December 22, 1977, after an "unremarkable" stay with a diagnosis of bilateral inguinal hernias (repaired) and acute lumbosacral strain, which was the result of a fall suffered two days prior to admission. Morgan's treating physician, Dr. George Kaspar, stated on an insurance form on January 16, 1978, that Morgan would be disabled until February 10, 1978. A subsequent "certificate of attending physician" indicated that Morgan was released "to perform regular duties" on February 1, 1978. On March 13, 1978, Dr. Kaspar diagnosed Morgan as having paroxysmal tachycardia (rapid pulse).

■ Morgan was hospitalized from December 1, 1978 to December 6, 1978 for chest pain. His heart was monitored continuously, and no acute abnormalities were detected. Dr. Kaspar's discharge diagnosis, dated January 14, 1979, stated "cardiac disease to be ruled out." Subsequent medical examinations were similarly unable to discern any significant cardiac abnormality, and one report concluded that Morgan's condition was "probably psychogenic."[1] However, in an insurance form dated February 20, 1979, Dr. Kaspar claimed Morgan was totally and indefinitely disabled by his heart condition and hernias. Dr. Kaspar gave no reason for his changed opinion and provided no clinical basis to support this opinion. This opinion was inconsistent with the clinical and laboratory findings in the record, and the courts below properly disregarded it. *See Coats v. Heckler,* 733 F.2d 1338, 1340 & n. 4 (9th Cir.1984) (weight to be accorded to doctor's statement depends on extent to which it is supported by clinical findings). Morgan's heart problems did not support an infer-

ence of disability prior to December 31, 1979.

■ Morgan's back problems do not indicate the existence of a compensable disability prior to the last insured date. On December 20, 1977 Morgan was examined and found to have degenerative arthritis, but no acute skeletal abnormality. Although Morgan was observed to have ambulatory difficulty when he was hospitalized in 1977 for his hernias, he had recently suffered a fall, and residual functional capacity assessment forms in 1984 indicated that Morgan was physically "unlimited." No medical evidence was offered indicating Morgan was precluded from engaging in his work as a truck driver prior to December 31, 1979.

B. *Non-exertional Disability Claim*

■ The question of Morgan's asserted non-exertional (i.e., mental) disability is more difficult. As in the case of his physical disability claim, his last insured date was December 31, 1979. The significant date for disability compensation is the date of onset of the disability rather than the date of diagnosis. *See Swanson v. Secretary of Health and Human Services,* 763 F.2d 1061, 1065 (9th Cir.1985); Social Security Rule ("SSR") 83–20, Policy Statement ("The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations."). Mental disorders may manifest themselves over a period of time. Consequently, the precise date of onset of a disabling psychological impairment may be difficult, or impossible, to ascertain, and the services of a specialist may be necessary to infer the onset date.

■ Morgan dates the onset of his non-exertional disability to 1977 when he underwent his hernia operation. Although his present mental disability may well have been triggered by the hernia operation, the first unambiguous evidence in the record of a mental impairment occurs in January 1980 when Morgan was treated at a clinic

---

**1.** A consultive examination performed on December 9, 1989 revealed a slight dilation in the right ventricle and mild arteriosclerotic heart disease with possible early angina. [Record 274]

for anxiety and referred to a counselor. In March 1980 a rheumatologist characterized Morgan as "nearly incapacitated by severe depression and chronic anxiety." On December 9, 1981, a consultive examination revealed a "not quite appropriate response," and concluded that any limitation on Morgan's work ability would be associated with anxiety of a hypochondriacal nature. Finally, examinations performed in September and October 1984 revealed possible schizophrenia, which was confirmed in 1985.

There are indications that Morgan's mental condition was disabling prior to December 31, 1979. During October 1979 and January 1980 hospital visits, Morgan's behavior revealed at least a great deal of stress and perhaps early evidence of progressive mental illness. During December 1979 he received counseling from a community mental health clinic.[2] Only four weeks after his insured period ended, Morgan visited a hospital emergency room complaining of "extreme anxiety." The attending physician noted Morgan's state of distress:

> A 56 year old male who has been under a great amount of stress, including financial, job related and family for approximately the *last two years. This has become progressively worse in the past year.* He has been seen ... [by his treating physician] numerous times for tachycardia, chest pain; he has had several cardiac studies, including stress test. These have all been normal. The man now states that he has a potentially serious time in his life, he feels that he will explode if he can't deal with the situation, claims that he is not a man who comes to doctors, he feels he needs help....

Although not sufficient to demonstrate clearly an onset of mental impairment prior to December 31, 1979, this evidence should have caused the ALJ to scrutinize the government's denial of benefits.

Social Security Ruling 83–20 (SSR 83–20) provides:

---

**2.** Records of these visits have been destroyed and thus the nature of this counseling is not known.

In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity. The weight to be given any of the relevant evidence depends on the individual case.

. . . . .

Medical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability. The medical evidence serves as the primary element in the onset determination.

. . . . .

With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling.... In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

. . . . .

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on the informed judgment of the facts in the particular case. *This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.*

The Rule suggests that when the evidence regarding date of onset of mental impairment is ambiguous, as it is here, the ALJ should determine the date based on an informed inference. *See Blankenship v. Bowen,* 874 F.2d 1116, 1122–23 (6th Cir. 1989) (recognizing progressive nature of

mental impairments and purpose of SSR 83–20 to permit the ALJ to make reasonable inferences regarding onset date). Such an inference is not possible without the assistance of a medical expert.

In this case the ALJ made the inference regarding the date of onset in favor of the government without the expertise required by SSR 83–20. Because the ALJ's onset date determination was without a "legitimate medical basis," it cannot stand. On remand, the ALJ should review the evidence of the onset of mental impairment with the assistance of a medical advisor pursuant to SSR 83–20.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.