Percetta M. SPEIGHT, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of
Social Security Administration,
Defendant.

No. CV 99–13545–RC.

United States District Court,
C.D. California.

Aug. 1, 2000.

Joel D. Leidner, Los Angeles, CA, for plaintiff.

Kevin B. Finn, Assistant United States Attorney, Office of the United States Attorney, Los Angeles, CA, for defendant.

## MEMORANDUM DECISION AND ORDER

CHAPMAN, United States Magistrate Judge.

Plaintiff Percetta M. Speight filed a complaint on January 5, 2000, seeking review of the Commissioner's decision denying her application for disability benefits. The plaintiff filed a motion for summary judgment on March 24, 2000, and the defendant filed a cross-motion for summary judgment on July 12, 2000. The plaintiff filed a reply on July 27, 2000. The parties have consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c).

## BACKGROUND

### I

On December 6, 1995 (protective filing date), the plaintiff applied for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 423, claiming an inability to work since January 1, 1992, due to anxiety attacks and hypertension. Certified Administrative Record ("A.R.") 82–85, 102. The plaintiff's application initially was denied on February 13, 1996, and was denied following reconsideration. A.R. 54–63. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge ("ALJ") Mason D. Harrell, Jr., on March 13, 1998. A.R. 29, 87–88. On April 29, 1998, the ALJ found the plaintiff is not disabled. A.R. 9–17. The plaintiff then sought review by the Appeals Council; however, review was denied on November 5, 1999. A.R. 4–8.

### II

The plaintiff was born on April 12, 1943; she is currently 57 years old. A.R. 80–82. The plaintiff completed high school, attended approximately two years of college,

and received on-the-job training classes in computers. A.R. 32, 106. She has prior work experience as a computer consultant, computer administrator, and systems engineer. A.R. 30–31, 96–101, 106.

The ALJ found the plaintiff is not disabled because she did not have a severe impairment between January 1, 1992, when she allegedly became disabled, and June 30, 1995, when she last met the disability insurance requirements of the Social Security Act ("Act"). A.R. 15–16. The plaintiff contends, however, that the ALJ's decision is not supported by substantial evidence because the onset date of her **mental** disability is uncertain; thus, the ALJ should have called a medical expert to determine its onset date.

## DISCUSSION

### III

■ The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine whether the findings are supported by substantial evidence and the Commissioner used the proper legal standards in reaching his decision. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir.1999); *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morgan v. Commissioner of the Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir.1999); *Meanel,* 172 F.3d at 1113. It is "more than a mere scintilla but less than a preponderance." *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir.1998); *Reddick,* 157 F.3d at 720.

■ "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole,

weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick,* 157 F.3d at 720; *Sandgathe v. Chater,* 108 F.3d 978, 980 (9th Cir.1997) (per curiam). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." *Reddick,* 157 F.3d at 720–21; *Sousa v. Callahan,* 143 F.3d 1240, 1243 (9th Cir.1998).

■ The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir.1995), *cert. denied,* 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996); *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. *See* 20 C.F.R. § 404.1520.[1] In **Step One,** the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(b). When the claimant is not currently engaged in substantial gainful activity, the ALJ, in **Step Two,** must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(c). A severe impairment or combination of impairments exists when there is more than a minimal effect on an individual's ability to do basic

1. When there is evidence of a mental impairment that prevents a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations dealing specifically with mental impairments. *See* 20 C.F.R. § 404.1520a.

work activities. 20 C.F.R. § 404.1521(a); *Smolen*, 80 F.3d at 1290. Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, coworkers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

Here, the ALJ proceeded through only Steps One and Two.[2] In Step One, the ALJ found that plaintiff "did not engage in substantial gainful activity after January 1, 1992." A.R. 15. In Step Two, the ALJ found that although plaintiff has hypertension and a history of a suicide attempt prior to 1992, she did not have a severe impairment from January 1, 1992, through June 30, 1995.[3] A.R. 15–16.

### IV

■ When a Title II claimant's period of eligibility for disability benefits expires on a specific date, it is the claimant's burden to prove she was either permanently disabled or subject to a condition that became so severe as to disable her **prior** to that date. *Armstrong v. Commissioner of*

*the Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir.1998); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995); *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir.1993); *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir.1991) (per curiam). Thus, any deterioration in the condition subsequent to the period of eligibility is immaterial. *Johnson*, 60 F.3d at 1434; *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir.1989).

The ALJ denied plaintiff's application for disability benefits on the basis that plaintiff had not met her burden to show disability prior to the end of her eligibility period, although she had shown that "she probably can not work now due to her depression...." A.R. 14. In finding "insufficient evidence" of mental disability prior to June 30, 1995, *id.*, the ALJ specifically found:

> [The plaintiff] said that when she stopped working in 1992, she had been having some problems, but tried to ignore them, noting that her doctor had told her she was under stress and that she had panic attacks while driving around which forced her to stop driving sometimes due to the stress of driving. She also said that she did not see any psychiatrist or psychologist at that time due to the type of person she was, extroverted and work oriented, explaining that she could not accept that she was

---

2. In the Third Step, the ALJ must compare the claimant's impairment to those in the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or equals an impairment in the Listing, disability is conclusively presumed and benefits awarded. 20 C.F.R. § 404.1520(d). When the claimant's impairment does not meet or equal an impairment in the Listing, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient "residual functional capacity" despite the impairment or various limitations to perform her past work; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(e). When the claimant shows an inability to perform past relevant work, a prima facie case of disability is established and, in **Step Five**, "the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consider-

ation the claimant's residual functional capacity, age, education, and work experience." 20 C.F.R. § 404.1520(f).

3. Specifically, the ALJ found:

> The medical evidence of record establishes that the [plaintiff] from the alleged onset date through June 1995 had hypertension and a history of major depression, but the evidence of record is insufficient to establish that the [plaintiff's] medically determined impairments limited the [plaintiff's] ability to perform basic work-related activities more than minimally. Accordingly, the [plaintiff] has not established that she had a "severe" impairment, as defined in the Regulations[,] on or before the date she last met the special disability insured status requirements of the [Social Security] Act.

A.R. 12.

sick and that she had hidden this problem from her treating physician, Dr. Zinni [sic], who finally referred her to a psychiatrist, Dr. Iacuoa [sic], in December 1996.

*Id.*

■ Here, "the critical date is the date of onset of disability, not the date of diagnosis." *Swanson v. Secretary of Health & Human Servs.*, 763 F.2d 1061, 1065 (9th Cir.1985); *Morgan*, 945 F.2d at 1081. Social Security Ruling [SSR] 83–20 [4] sets forth guidelines for determining the date of onset of a disability:

> [T]he date alleged by the [claimant] should be used if it is consistent with all the evidence available.... [T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.... [¶] In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. **At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.** If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83–20, 1983 WL 31249, *3 (S.S.A.) (emphasis added). "If the 'medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83–20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.'" *Armstrong*, 160 F.3d at 590 (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991)).

■ The plaintiff contends the ALJ erred in not seeking testimony from a medical advisor to establish the onset date of her depression.[5] The plaintiff is correct. Here, the record shows some, limited evidence that plaintiff suffered from a mental disability prior to June 30, 1995. First, the plaintiff attempted suicide in 1991.[6] A.R. 159. Second, the plaintiff was prescribed Ativan [7] as early as July 13, 1992, A.R. 124–30, 157, and her treating physicians, Drs. Carlos Canizales and Gilbert Y. Zini, continued to prescribe Ativan through at least January 9, 1995. A.R. 124. Additionally, the plaintiff testified that, when she stopped working, she was experiencing gradually-worsening depression, anxiety attacks and "daymares [in which she would] see[ ] things." A.R. 48–50.

Moreover, at the administrative hearing, plaintiff presented medical evidence showing she was diagnosed with severe major

**4.** Social Security Rulings constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations. *Chavez v. Department of Health & Human Servs.*, 103 F.3d 849, 851 (9th Cir. 1996); *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir.1989).Social Security Rulings do not have the force of law; *Chavez*, 103 F.3d at 851; *Quang Van Han*, 882 F.2d at 1457; nevertheless, once published, they are binding upon ALJs and the Commissioner. *Gatliff v. Commissioner of the Soc. Sec. Admin.*, 172 F.3d 690, 692 n. 2 (9th Cir.1999).

**5.** Although Vu Dinh Minh, M.D., testified as a medical advisor at the administrative hearing, he testified only regarding plaintiff's physical condition, and not the onset of any mental disability. *See* A.R. 36–40.

**6.** The ALJ did not pursue the relationship, if any, between the suicide attempt in 1991 and plaintiff's cessation of work effective January 1, 1992. Moreover, at the administrative hearing, plaintiff's counsel inexplicably presented no documentary evidence regarding the suicide attempt.

**7.** Ativan, also called Lorazepam, "is used in the treatment of anxiety disorders and for short-term ... relief of the symptoms of anxiety." *The PDR Family Guide to Prescription Drugs,* 46 (5th ed.1997).

depression on October 23, 1996, by Wanda B. Olsen, M.D., who also determined plaintiff's Global Assessment of Functioning ("GAF") to be 60.[8] A.R. 198. The medical evidence from then on shows that plaintiff has suffered from serious, ongoing mental problems, including, at one point, having a GAF as low as 30.[9] A.R. 197. As recently as January 9, 1998, Louis Iacueo, M.D., a psychiatrist, found that plaintiff's concentration is very poor, she is fearful, she has a very flat affect, and "essentially does not leave the house." A.R. 194–97; *see also* A.R. 208–210. Dr. Iacueo further found that plaintiff, although able to dress and bathe herself,

> is capable of little self care. She cannot cook her meals, she cannot do simple chores, she cannot do repetitive tasks. She does not leave the house alone.... The slightest distraction disturbs her and most likely raises her blood pressure. Sleep is still very poor, particularly middle and late insomnia.

A.R. 196. Dr. Iacueo concluded that "[t]here is no way that I can see [plaintiff] going back to work. Her depression at this time would make her unemployable." A.R. 196–97; *see also* A.R. 208–10.

Because "[m]ental disorders may manifest themselves over a period of time[,] ... the precise date of onset of a disabling psychological impairment may be difficult, or impossible to ascertain, and the services of a specialist may be necessary to infer the onset date." *Morgan*, 945 F.2d at 1081; *see also Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996) (stating "depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness"). Accordingly, the ALJ erred at Step Two of the sequential

analysis when he failed to call a medical advisor or expert to testify regarding the onset date of plaintiff's depression. *Armstrong*, 160 F.3d at 589; *Morgan*, 945 F.2d at 1082–83. Since this error can be corrected with further proceedings, remand is the appropriate remedy. *Armstrong*, 160 F.3d at 590–91; *Morgan*, 945 F.2d at 1083.

## ORDER

IT IS ORDERED that: (1) plaintiff's motion for summary judgment is granted and the defendant's motion for summary judgment is denied; and (2) the Commissioner's decision is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Decision, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

---

**8.** A GAF of 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed.1994).

**9.** A GAF of 30 indicates "[b]ehavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." *Id.*