**Laura L. QUARLES, Plaintiff,**

**v.**

Jo Anne B. BARNHART,[1]
Commissioner of Social
Security, Defendant.

No. C–00–1814–PJH.

United States District Court,
N.D. California.

Dec. 21, 2001.

---

**1.** Jo Anne B. Barnhart, the current Commissioner, is substituted as the defendant pursuant to Federal Rule of Civil Procedure 25(d)(1).

Matthew L. Howard, Talmadge, CA, for plaintiff.

Jocelyn Burton, U.S. Attorney's Office, Oakland, CA, for defendant.

## MEMORANDUM DECISION AND ORDER THEREON

HAMILTON, District Judge.

Plaintiff Laura Quarles ("Quarles") seeks judicial review of the Commissioner's final decision denying her claim for disability benefits pursuant to 42 U.S.C. § 405(g). Having considered the parties' cross-motions for summary judgment and reviewed the administrative record, this case is reversed and remanded to the Commissioner for further proceedings in accordance with this court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 1997, Quarles applied for disability benefits, alleging various mental and physical impairments, including hypertension, stress and anxiety disorders, diabetes, and back problems, with a disability onset date of February 1, 1990.[2] Her application was denied initially and on reconsideration. Thereafter, pursuant to Quarles' request, an Administrative Law Judge ("ALJ") held a hearing on January 7, 1999, and subsequently denied Quarles' application for benefits on April 16, 1999. Quarles appealed to the Appeals Council, which denied review on March 6, 2000. Quarles then filed a timely appeal, and this court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Laura Quarles is currently a fifty year old woman, born June 25, 1951. She has a tenth grade education, and has worked at a variety of positions over the years including as a bartender, a nurse's aid, and, most recently, as a desk clerk for a mobile home trailer park. Administrative Record ("A.R.") 22–23, 111. She has been seen sporadically for various mental and physical ailments over the years, including back injuries and pain, hypertension, depression, anxiety, and sleeping difficulties.

In 1974, Quarles allegedly injured her back when high winds blew over the trailer in which she was living. A.R. 80, 144–45. She claims to have subsequently received

2. Quarles did not apply for Supplemental Security Income ("SSI") benefits.

physical therapy for her injuries and to have suffered from chronic back pain ever since the accident. A.R. 87–88, 145. In 1975, Quarles was allegedly diagnosed with borderline diabetes, but has not been receiving treatment for the diabetes.[3] A.R. 26, 35, 80, 150. Then, in 1983, Quarles states that she was placed on blood pressure medication after receiving emergency treatment for heat stroke. A.R. 89.

From 1983 until 1990, Quarles worked in the trailer park office and was primarily responsible for administrative duties, but at times was required to tend to emergencies and maintain the laundromat and the restrooms. A.R. 23–26. She has not worked since February 1990, her alleged onset date, when she quit her job as a desk clerk because of the attendant stress of the position and more severe back pain. A.R. 25–26, 149.[4] From 1990 to 1994, Quarles reports to have suffered from panic attacks, insomnia, and a fear of leaving her home. A.R. 149.

In August 1994, Quarles began seeing Dr. Theron Chan, M.D., a generalist, whom she would continue to see until December 1997 for various physical and mental conditions. A.R. 170–76. Quarles' husband testified that prior to seeing Dr. Chan in 1994, Quarles, who was no longer working, had become uncontrollable, depressed, and could hardly get out of the house. A.R. at 27–28. Her husband insisted at that point that she seek treatment. *Id.;* A.R. 149. For a period of approximately two months from August 1994 to September 1994, Dr. Chan saw Quarles for high blood pressure and complaints of distress, anxiety, depression, anger and poor sleep. A.R. 12, 28, 174–75. Dr. Chan diagnosed Quarles with hypertension, and prescribed medication for generalized anxiety disorder, which had to be discontinued shortly thereafter because of the side effects. A.R. 145. Quarles' husband testified that the conditions that encouraged them to seek treatment for Quarles back in 1994 persist today. A.R. 28.

From 1994 to 1997, there are no records of treatment for any of the alleged disabling conditions, although Quarles claimed that the same ailments persisted. A.R. 149. In early June 1997, when her blood pressure escalated, Quarles was seen again by Dr. Chan, who prescribed Lotensin. A.R. 145, 149, 173. On June 19, 1997, Quarles filed her application for disability benefits currently at issue on review. A.R. 70–72.

Subsequently, in September 1997, Dr. Chan notes sleeping problems, depression, and panic attacks. A.R. 172–73. At that time, he prescribed Paxil for Quarles. *Id.;* A.R. 149. Also in September 1997, Quarles underwent consultative psychiatric and internal medicine examinations with Drs. Lampe and Shrivastava, respectively. A.R. 145–52. Based on the consultation, Dr. Shrivastava diagnosed Quarles with "uncontrolled hypertension and chronic low back pain," and noted that Quarles was "quite anxious and depressed," with sweaty palms throughout the interview. A.R. 146–47.

---

3. The file does not contain medical records prior to 1994. Prior to August 1994, Quarles attested that she had been seeing another doctor, who had since retired. A.R. 25, 27, 83.

4. Quarles testified at her hearing that prior to resigning, she had been under stress for quite some time. A.R. 25. She quit after her stress escalated one weekend when her boss went out of town, apparently leaving Quarles to run the office. She testified that as a result of the stress, she "got real sick . . . ." *Id.*

After her psychiatric examination, Dr. Lampe diagnosed Quarles with major depression, panic disorder with agoraphobia,[5] alcohol dependence in remission, back pain, and hypertension. A.R. 151. Dr. Lampe explained in his report that:

> This is a very unfortunate woman who apparently has suffered from severe depression, panic, and agoraphobia.... A.R. 151.... Unfortunately, from 1990 until now, the claimant never sought any psychiatric treatment. When she sought treatment from a generalist, apparently her severe depression, panic disorder, and agoraphobia were not correctly diagnosed.... A.R. 150.... She has not been able to seek adequate and competent psychiatric care. Only in the last week or so, a generalist started her on Paxil and it appears that she is beginning to respond to this.... A.R. 151.

Dr. Lampe's prognosis was encouraging, though, and noted that Quarles had "very treatable illnesses." A.R. 151. Nevertheless, Dr. Lampe was not optimistic regarding the effect of Quarles' condition on her ability to work at the time.

> The claimant would still have difficulty relating and interacting with coworkers and supervisors. The claimant can understand, remember, and carry out simple instructions. The claimant cannot carry out technical or complex instructions. The claimant would still have difficulty dealing with the public. The claimant is not able to maintain a good level of concentration and attention. The claimant can not withstand the

stress and pressure of an eight hour work day.
A.R. 151–52.

In October 1997, state agency consulting physicians proffered opinions as to Quarles' physical and mental impairments.[6] A.R. 153–69. The physical residual functional capacity assessment conducted on October 7, 1997 noted high blood pressure and back pain. A.R. 160. The psychiatric review dated October 30, 1997 determined severe affective and anxiety-related disorders that were nevertheless not expected to last twelve months. A.R. 161.

In January 1998, Quarles subsequently sought treatment at the Mountain Lake Family Health Center, where her records show notations regarding agoraphobia, panic attacks, depression, and treatment with Paxil. A.R. 207. Quarles was again seen by a provider at the Mountain Lake Family Health Center, Dr. Andrew Dorfman, on September 29, 1998. Dr. Dorfman confirmed Quarles' hypertension diagnosis and refilled her Lotensin prescription, began treating her for agoraphobia with Klonopin, and diagnosed "grief reaction with depression," noting the recent death of Quarles' son, and prescribed Prozac. A.R. 206. A subsequent visit to Dr. Dorfman on October 30, 1998, reiterates those diagnoses, among others. A.R. 226. Those were the last medical records that appear to be have been considered by the ALJ in reaching his decision.

The Commissioner initially denied Quarles' application on November 16, 1997 and subsequently on reconsideration on

---

5. "Agoraphobia" is an "[a]bnormal fear of open, especially public, places." Webster's II New Riverside Dictionary 87 (Houghton Mifflin Company 1988).

6. These opinions appear to have been based only on a review of Quarles' records, and not on a consultation or meeting with Quarles.

As a result, the ALJ noted that he did not consider these opinions since they were not from the "specific period in issue" and because Quarles' testimony was not available to the physicians in conducting the assessments. A.R. 14.

April 9, 1998. Then, on April 16, 1999, following a hearing on January 7, 1999, the ALJ ruled that Quarles was not eligible for disability benefits because she was "not disabled as defined in the [Social Security] Act on or before the date she was last insured for disability benefits." A.R. 12. While noting that there was medical evidence "that currently establishes severe emotional disorders," A.R. 13, the ALJ nonetheless found "that no medically determinable physical, anatomical or psychological disorder has been established to have existed ... for twelve continuous months on or before December 31, 1995." *Id.*

A key factor in the ALJ's decision was the lack of medical evidence for the period from the onset date, February 1, 1990, to Quarle's date last insured, December 31, 1995. In reaching his decision, the ALJ noted that Dr. Chan's records were the only medical records covering the above period. A.R. 12. Although Dr. Chan's records and reports referenced complaints and disorders including distress, nervousness, depression, anger, and poor sleep, there was no "mental status examination ... with significantly abnormal signs and symptoms," nor was Quarles "referred for psychiatric or psychological evaluation and treatment." A.R. 12–13. Based on the lack of "abnormal clinical and laboratory findings," for the period from February 1, 1990 to December 31, 1995, the ALJ found no "medically documented psychiatric disorder" and denied benefits. A.R. 13.

## DISCUSSION

### A. STANDARD OF REVIEW

■ This court will affirm the Commissioner's decision if, upon a review of the record as a whole, the Commissioner applied the correct legal standards and if substantial evidence supports the decision. *See Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is greater than a mere scintilla, but is less than a preponderance. *See id.* The ALJ's determinations of law are reviewed *de novo. See McNatt v. Apfel,* 201 F.3d 1084, 1087 (9th Cir.2000). Where an error of law has been made, this court can not simply defer to the ALJ's factual findings. *See id.; see also Smith v. Bowen,* 792 F.2d 1547, 1549 (11th Cir.1986).

### B. STATUTORY AND REGULATORY FRAMEWORK

■ The Social Security Act (the "Act") provides for the payment of disability insurance benefits ("DIB") to those who have contributed to the program and who suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1). It is the claimant's burden to prove that she suffers from a disability. *See Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir.1995). "Disability" under the act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A "physical or mental impairment" is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Regulations promulgated by the Commissioner set forth a five-step sequential analysis to be used by an ALJ in determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The inquiry is terminated at the stage that a decision can be made that the claimant is or is not disabled. *See Pitzer v. Sullivan,* 908 F.2d 502, 504 (9th Cir.1990). In Step One, the ALJ must determine whether the claimant

is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled and the claim is denied. If the ALJ determines that the claimant is not currently engaged in substantial gainful activity, Step Two requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

Here, the ALJ terminated the inquiry at Step Two, having already determined that Quarles "ha[d] not engaged in any substantial gainful activity since her alleged onset date of disability of February 1, 1990." A.R. 12. He concluded that the evidence did not establish either a physical or mental "medically determinable impairment on or before December 31, 1995," Quarles' date last insured. *Id.* This is despite the fact that the ALJ noted evidence that "currently establishes severe emotional disorders...." [7] A.R. 13.

---

7. Had the ALJ proceeded to Steps Three through Five of the sequential analysis, he would have been required at Step Three to compare Quarle's impairment to a Listing of impairments. If her impairment met or equalled an impairment in the Listing, a disability would have been presumed and benefits awarded. *See* 20 C.F.R. § 404.1520(d). The ALJ would have proceed to Step Four only if Quarles' condition did not meet the Listings at Step Three. At Step Four, the ALJ considers whether the claimant has sufficient "residual functional capacity" to perform her past work despite the impairment and/or limitations. 20 C.F.R. § 404.1520(e). If so, then the burden shifts to the Commissioner at Step Five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's "residual functional capacity, age, education, and work experience." 20 C.F.R. § 404.1520(f).

8. On appeal, the court limits its review of the ALJ's final decision to that with respect to

## C. ANALYSIS

■ The dispositive issue on review is whether or not the ALJ erred when he failed to call a medical expert to determine Quarles' onset date with respect to her mental impairments.[8] Because this court concludes that the ALJ was required to consult a medical expert since ambiguities existed regarding the onset date, this matter is reversed and remanded to the Commissioner for proceedings consistent with this court's decision and order. *See Armstrong v. Commissioner,* 160 F.3d 587, 589 (9th Cir.1998)(ALJ's failure to call medical expert before inferring an onset date where the record was unclear was reversible error).

■ In order to obtain disability benefits, Quarles must demonstrate that she was disabled for twelve continuous months prior to her date last insured ("DLI"), December 31, 1995. *See* 42 U.S.C. § 423(c); *see also Armstrong,* 160 F.3d at 589; *Johnson v. Shalala,* 60 F.3d 1428,

Quarles' mental disorders because that is the scope of Quarles' challenge on appeal. Quarles does not contest the ALJ's decision regarding her alleged physical impairments. Nevertheless, if this court were to consider the ALJ's decision with respect to the alleged physical impairments, it would be inclined to uphold the ALJ's decision. Physical impairments are not of the same nature as mental impairments, and it is unlikely that the basis for reversing and remanding regarding the mental impairments would exist. *See, e.g., Posey v. Apfel,* 2001 WL 725395 at *5 (N.D.Cal.2001)(noting that ALJ has a more heightened duty to assist a claimant in developing the record with respect to mental impairments than with physical impairments). The onset date of physical impairments is generally not of the same gradual and progressive nature as is the case with mental impairments, which often require the assistance of a medical expert. *See generally* Social Security Ruling ("SSR") 83–20.

1432 (9th Cir.1995). Both the Commissioner and Quarles agree that December 31, 1995 was the last date Quarles was insured for purposes of disability benefits. Although Quarles bears the burden of proof, the ALJ must assist in developing the record. *See Armstrong,* 160 F.3d at 589; *DeLorme v. Sullivan,* 924 F.2d 841, 849 (9th Cir.1991).

■ The ALJ in this case erred as a matter of law when he did not call a medical advisor, but instead inferred, based on the dates of medical treatment, that the onset date of Quarles' "currently establishe[d] severe emotional disorders" was not prior to Quarles' DLI. He mistakenly confused the concept of onset date with dates of diagnoses and treatment, focusing disproportionately on pre-DLI evidence and discounting evidence of mental impairment that post-dated Quarles' DLI. It is well-established, though, that the significant date for disability determination is the date of onset of the disability, not the date of diagnosis or the DLI. *See Morgan v. Sullivan,* 945 F.2d 1079, 1081 (9th Cir. 1991); *see also* Social Security Ruling 83–20 ("SSR 83–20") ("Although important to the establishment of a period of disability and to the payment of benefits, the *expiration of insured status is not itself a consideration in determining when disability first began.*")(emphasis added).[9] This is especially true for mental impairments, which unlike many physical impairments, are progressive in nature and whose onset dates may be elusive. *See id.*

■ The Ninth Circuit has frequently endorsed SSR 83–20, which provides in pertinent part with respect to mental impairments:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomology of the diseases process.

. . . . .

> In some cases it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in a particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge should call on the services of a medical advisor when onset must be inferred.

*See Armstrong,* 160 F.3d at 589–90 (discussing ruling); *see also Morgan,* 945 F.2d at 1082; *DeLorme,* 924 F.2d at 848. The Ninth Circuit has held, based on SSR 83–20, that where medical inferences regarding the onset date need to be made, the ALJ *must* consult a medical expert before determining the onset date. *See Armstrong,* 160 F.3d at 590. This is regardless of how careful and well-supported the ALJ's inference may be. *See Anderson v. Apfel,* 2000 WL 913666 at *6 (D.Or.2000). Where the evidence is ambiguous and there are indications that the claimant's

---

**9.** Social Security Rulings "are binding on all components of the administration." *Sullivan* *v. Zebley,* 493 U.S. 521, 531 n. 9, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

mental condition was disabling prior to the DLI, then a medical expert must be called. *See Morgan,* 945 F.2d at 1082.

A review of the record and evidence before the ALJ demonstrates an ambiguity regarding the onset of Quarles' mental impairments. The ALJ here noted Dr. Lampe's testimony and diagnosis which "currently establishes severe emotional disorders." A.R. 13. He discounts the evidence, though, on the basis that the psychiatric evaluation occurred nearly two years after the DLI. That the evaluation did not take place until 1997 does not mean that the onset did not occur before the DLI. The mental disorders could have been disabling long before 1997. *See Armstrong,* 160 F.3d at 590 (Even though claimant's depression was not diagnosed until 1994, his onset date could have been prior to 1992, his DLI.); *see also Speight v. Apfel,* 108 F.Supp.2d 1087, 1092 (C.D.Cal.2000) (Recognizing that the claimant's emotional disorders could have dated back to her alleged onset date of 1992 even though she was not diagnosed with depression until 1996.).

The fact that pre-DLI medical reports or clinical tests may not exist does not diminish the ambiguity regarding onset date or relieve the ALJ of his duty to develop the record with respect to this period. This case is similar to others in which a diagnosis of mental disorder did not occur until *after* the DLI, or in some cases, following a claimant's application for benefits. In *Speight,* the claimant suffered from hypertension and mental illness, including anxiety attacks and depression, but did not seek treatment from a psychiatrist until 1996, one year after she applied for benefits and subsequent to both her alleged onset date and DLI, because she could not accept the fact that she had a problem. 108 F.Supp.2d at 1090–91. Here, like the claimant in *Speight,* the fact

that there were no pre–1995 psychiatric records or diagnoses does not mean that Quarles was not disabled prior to 1995.

Because there was limited evidence that Quarles suffered from a mental disability prior to her DLI and because there was an ambiguity as to the onset date, the ALJ should have called a medical expert. *See Speight,* 108 F.Supp.2d at 1091 (remanding for medical expert opinion where record showed "limited evidence" that plaintiff suffered from a mental disability prior to her DLI); *see also Morgan,* 945 F.2d at 1082 (remanded for further proceedings where there were "indications" that claimant's mental condition was disabling prior to DLI); *Anderson,* 2000 WL 913666 at *6 (remanding where there was "evidence that *at the time of the hearing,* plaintiff suffered from disabling, severe impairments, which [could] be fairly described as progressive" and where ALJ inferred onset date). Here, Quarles and her husband testified that her mental condition dated back prior to her DLI. A.R. 25, 26, 28, 149. This was further substantiated by Dr. Lampe's 1997 report which noted that Quarles had failed to receive proper treatment over the years for her emotional disorders. A.R. 150–51. The records of Dr. Chan, Quarles' treating physician from 1994 to 1997, also reflect related complaints of anxiety, insomnia, and depression. A.R. 12, 28, 172–75.

The Commissioner makes the very same argument that was rejected by the Ninth Circuit in *Armstrong:* that Quarles failed to meet her burden to show that she was disabled for twelve consecutive months as of her DLI. *See* 160 F.3d at 590. The Ninth Circuit recognized that such reasoning would have the effect of nullifying SSR 83–20.

> If, as the Commissioner [sic] argues, an ALJ does not have to call a medical expert unless the claimant has fulfilled his burden of proving an onset date,

SSR 83–20 would have no application. If the claimant proved a date, there would be no need to call a medical expert, and if the claimant, as in this case, was unable to prove a date, then the ALJ would deny disability benefits because the claimant failed to carry his burden. We refuse to interpret the claimant's burden as eliminating SSR 83–20's requirement. Consequently, we reaffirm this court's previous holding that where a record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date.

*Id.*

Nor is there merit to the Commissioner's arguments that there is no ambiguity and that the ALJ made no medical inferences. Once again, the Commissioner confuses onset date with the date that Quarles sought treatment. *Cf. Anderson,* 2000 WL 913666 at *5 (rejecting Commissioner's argument regarding lack of ambiguity and noting that Commissioner "confuse[s] the task of determining the date(s) that plaintiff's various impairments may have become manifest with the duty the ALJ has to assist in determining the date of onset of disability").

In this case, there were no medical opinions establishing the onset date. Rather, the ALJ inferred, based on the absence of a psychiatric diagnosis prior to the DLI, that the onset date could not have been such that Quarles was disabled for twelve months prior to her DLI. This is exactly the type of inference that existing law discourages by requiring the consultation of a medical advisor. Since "[m]ental disorders may manifest themselves over a period of time... the precise date of onset

of a disabling psychological impairment may be difficult or impossible to ascertain, and the services of a specialist may be necessary to infer the onset date." *Morgan,* 945 F.2d at 1081; *see also Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir.1996)(recognizing that "depression is one of the most under-reported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness.").

The remaining issues raised by Quarles are either mooted by this court's determination that a medical expert must be consulted in determining an onset date or are issues for the Commissioner to consider on remand. Quarles' other primary challenges involve the ALJ's failure to continue with the sequential evaluation past Step Two. The court agrees that the ALJ erred by terminating the sequential analysis at Step Two without calling a medical expert. *See Speight,* 108 F.Supp.2d at 1092 (reaching the same conclusion where the ALJ halted the analysis at Step Two without consulting a medical expert regarding the onset date of the claimant's depression). However, Step Three, which was not performed by the ALJ and involves a comparison of Quarles' condition with the Listings, is more appropriately considered by the Commissioner after consultation with the medical expert regarding onset date on remand. Thus, in remanding to the Commissioner, this court makes no determinations regarding whether Quarles' mental impairments satisfy the Listings.[10]

## CONCLUSION

Because the onset date of Quarles' mental conditions is ambiguous, the ALJ was

---

10. The Commissioner agrees with Quarles on her final issue—the mischaracterization and misapplication of the vocational expert's testimony. Because this court determines that the ALJ was required to call a medical expert

before inferring an onset date, the mischaracterization was not harmless and these grounds can not serve as an alternative basis for upholding the ALJ's final decision.

required to call a medical expert before inferring the date. Here, the ALJ made the inference regarding onset in favor of the Commissioner without the benefit a medical advisor, and therefore erred at Step Two of the sequential analysis. Accordingly, this case is reversed and remanded for determination regarding Quarle's entitlement to disability benefits, with the assistance of a medical advisor regarding Quarles' onset date.

For the foregoing reasons, Quarles' motion for summary judgment is hereby granted in part and denied in part, and the Commissioner's motion for summary judgment is denied. The case is remanded to the Commissioner for further proceedings consistent with this Decision pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly. All other related motions are moot.

This order fully adjudicates the motions listed at Nos. 7 and 10 of the clerk's docket for this case, and closes the case and terminates all pending motions.

**IT IS SO ORDERED.**