**Victor HERRERA, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant.**

**No. EDCV 04–0732–RC.**

United States District Court, C.D. California.

July 20, 2005.

Bill LaTour, Loma Linda, CA, for plaintiff.

Constance M. Komoroski, Assistant United States Attorney, Los Angeles, CA, for defendant.

## OPINION AND ORDER

CHAPMAN, United States Magistrate Judge.

Plaintiff Victor Herrera filed a complaint on June 18, 2004, seeking review of the Commissioner's decision denying his application for disability benefits. The Commissioner answered the complaint on February 28, 2005, and the parties filed a joint stipulation on April 4, 2005.

## BACKGROUND

### I

On September 11, 2002, plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, claiming an inability to work since April 1, 1997, due to neck, back, and waist problems.[1] Certified Administrative Record ("A.R.") 57–59, 78. The plaintiff's ap-

---

1. The plaintiff previously applied for Title II benefits on February 12, 1999, A.R. 52–54; however, his application was denied on May 17, 1999, and he did not appeal the denial. A.R. 17, 29–32.

plication was initially denied on October 25, 2002, and was again denied on December 3, 2002, following reconsideration. A.R. 33–42. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Norman Buls ("the ALJ") on July 17, 2003. A.R. 43, 249–68. On October 24, 2003, the ALJ issued a decision finding plaintiff is not disabled. A.R. 14–25. The plaintiff appealed this decision to the Appeals Council, which denied review on April 19, 2004. A.R. 3–7.

## II

The plaintiff, who was born on March 10, 1954, is currently 51 years old. A.R. 52, 57, 252. He has a ninth-grade education and has previously worked as a painter, upholsterer, and carpenter. A.R. 65, 70, 79, 84, 93–95, 253–54.

The plaintiff has a long history of back pain, initially injuring his back in the 1980s. A.R. 261–62. Between June 20, 1997, and September 20, 2002, plaintiff received treatment from Feliciano Reyes, M.D., who diagnosed him with a cervical sprain, among other conditions. A.R. 170–95. A lumbar spine CT scan taken June 25, 1997, revealed broadbased circumferential disc protrusion at L3–L4, without focal protrusion, and degenerative changes in the apophyseal joints leading to mild foraminal encroachment at L5–S1. A.R. 146, 191. A lumbar spine CT scan taken September 5, 2002, revealed a bulging disc at L4–5 and a disc protrusion centrally at L5–S1. A.R. 171.

Cervical and lumbosacral spine x-rays taken at Victor Valley Community Hospital on March 20, 1998, revealed degenerative disc disease at C3–4, C4–5, and C5–6, with a small posterior osteophyte [2] en-

croaching upon the central canal at C5–6, and mild anterior spurring of L3–L5. A.R. 165. Cervical spine x-rays taken at the same facility a year later, on February 26, 1999, showed mild disc space narrowing at C4–5, C5–6, and C6–7, with facet spurring. A.R. 164.

On July 16, 1998, Rajiv Puri, M.D., an orthopedic surgeon, examined plaintiff and diagnosed him with a herniated lumbar disc, degenerative lumbosacral spine arthritis, and cervical spine arthritis. A.R. 142–44. Cervical and lumbosacral spine x-rays taken July 22, 1998, demonstrated mild disc space narrowing at C5–6, with associated anterolateral and posterolateral spurring and the suggestion of early arthritic changes involving the facet joints at L5–S1 bilaterally. A.R. 139. A lumbar spine MRI obtained August 13, 1998, showed mild degenerative changes of the lumbar spine, with straightening of the lumbar lordosis, which could be caused by muscle spasm. A.R. 138. On August 17, 1998, Dr. Puri referred plaintiff for physical therapy. A.R. 124–26, 136–37. On February 15, 1999, Dr. Puri revised his diagnosis to include degenerative arthritis in the cervical and lumbosacral spine. A.R. 135.

On December 15, 1998, Komlesh Yelamanchili, M.D., examined plaintiff and diagnosed him with shortness of breath, among other conditions. A.R. 128–33. A stress test was negative. A.R. 132, 181. Dr. Yelamanchili reevaluated plaintiff on November 1, 2002, and upper gastrointestinal studies showed intermittent gastroesophageal reflux disease. A.R. 243. A cardiac stress test performed December 19, 2002, demonstrated subtle findings consistent with posterior/posteroseptal ischemia [3] involving 10%–15% of the total left

---

**2.** An osteophyte is "a bony excrescence or osseous outgrowth." *Dorland's Illustrated Medical Dictionary* at 1290.

**3.** Ischemia is a "deficiency of blood in a part, usually due to functional constriction or actual obstruction of a blood vessel." *Dorland's Illustrated Medical Dictionary* at 920.

ventricle volume and a left ventricle ejection fraction of 56%,[4] with posteroinferior and posteroseptal hypokinesis. A.R. 241. When last examined on January 21, 2003, Dr. Yelamanchili diagnosed plaintiff with mild coronary artery disease and disc disease with radiculopathy. A.R. 236

Starting on or about November 8, 2001, Arthur E. Jimenez, M.D., began treating plaintiff for herniated cervical and lumbar discs. On October 22, 2002, Dr. Jimenez opined that plaintiff: is limited to lifting or carry less than 10 pounds occasionally or frequently; can stand and/or walk for less than 2 hours in an 8–hour day; can sit for less than 6 hours in an 8–hour day; can occasionally climb, balance, stoop, kneel, crouch, or crawl; and is limited in his ability to work at heights or around moving machinery as well as to work at temperature extremes. A.R. 206–09. Dr. Jimenez further opined plaintiff needs to alternate standing and sitting, and he needs a cane to walk if he walks over 2 miles. A.R. 207, 209. On June 5, 2003, Dr. Jimenez opined plaintiff: can lift less than 10 pounds; can stand and/or walk for approximately 5–10 minutes in an 8–hour day; can occasionally twist, stoop, crouch and climb; has problems handling, fingering, feeling, and pushing or pulling; needs the opportunity to change positions at will, and can only sit or stand for 10 minutes before having to walk for 10 minutes. A.R. 233–35. Dr. Jimenez further opined plaintiff must lie down for 20–30 minute intervals at unpredictable times during the day. A.R. 234. Finally, Dr. Jimenez found plaintiff should avoid all exposure to hazards, even moderate exposure to extreme cold or fumes, and concentrated exposure to extreme heat, humidity and noise. A.R. 235. Dr. Jimenez concluded

that plaintiff is "unable to perform any duties at this time." *Id.*

## DISCUSSION

### III

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir.1999); *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burch v. Barnhart,* 400 F.3d 676, 678 (9th Cir.2005) (citation omitted); *Morgan v. Comm'r of the Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir.1999).

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir.1995), *cert. denied,* 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996); *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. § 404.1520. In the First Step, the ALJ

---

4. Ejection fraction is "the proportion of the volume of blood in the ventricles at the end of diastole that is ejected during systole; it is the stroke volume divided by the end-diastolic volume, often expressed as a percentage. It is normally 65 ± 8 per cent; lower values indicate ventricular dysfunction." *Id.* at 708.

must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the Third Step, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. § 404.1520(f). If not, in Step Five, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset date. (Step One). The ALJ then found that, as of his date last insured, plaintiff has an impairment or combination of impairments considered severe (Step Two); however, he does not have an impairment or combination of impairments that meet or equal a listed impairment. (Step Three). The ALJ next determined plaintiff cannot perform his past relevant work. (Step Four). Finally, the ALJ concluded that, as of his date last insured, plaintiff could perform a substantial number of jobs in the national economy; therefore, he is not disabled. (Step Five).

### IV

■ The ALJ found plaintiff was last insured under Title II on December 31, 1999, A.R. 24, and plaintiff does not chal-

lenge this finding. When a Title II claimant's period of eligibility for disability benefits expires on a specific date, it is the claimant's burden to prove he was either permanently disabled or subject to a condition that became so severe as to disable him prior to that date. *Armstrong v. Comm'r of the Soc. Sec. Admin.,* 160 F.3d 587, 589 (9th Cir.1998); *Macri v. Chater,* 93 F.3d 540, 543 (9th Cir.1996). Thus, any deterioration in the condition subsequent to the period of eligibility is immaterial. *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995); *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir.1989).

Although the ALJ found plaintiff was not disabled prior to December 31, 1999, A.R. 24–25, he stated at the administrative hearing that he would "clearly find [plaintiff] disabled" as of the date of the hearing (July 17, 2003). A.R. 266. Moreover, the medical evidence shows that, as of October 22, 2002, plaintiff's treating physician, Dr. Jimenez, opined plaintiff was unable to work an 8–hour day, A.R. 206–09, and as of June 5, 2003, Dr. Jimenez determined plaintiff was "unable to perform any duties." A.R. 233–35.

■ Here, the evidence is ambiguous as to when plaintiff's condition became disabling; however, it is clear that plaintiff's degenerative spinal condition predates his last insured date. *See, e.g.,* A.R. 135, 138–39, 142–44, 146–51, 164–65, 191. As such, plaintiff contends the ALJ erred in failing to properly develop the record to establish plaintiff's onset date, which may have been before plaintiff's last insured date. The plaintiff is correct.

■ For social security purposes, "the critical date is the date of onset of disability, not the date of diagnosis." *Swanson v. Sec. of Health & Human Servs.,* 763 F.2d 1061, 1065 (9th Cir.1985); *Morgan v. Sullivan,* 945 F.2d 1079, 1081 (9th Cir.1991) (per curiam). "The onset

date of disability is the first day an individual is disabled as defined in the Act and the regulations." Social Security Ruling ("SSR") 83–20;[5] *Morgan,* 945 F.2d at 1081. Under Social Security Ruling 83–20, the following guidelines should be used to determine the date of the onset of disability:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to **infer** the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. [¶] Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity ... before onset can be established. ... **[T]he date alleged by the [claimant] should be used if it is consistent with all the evidence available.** ... [T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.... [¶] In some cases, it may be possible, based on the medical evidence to **reasonably infer** that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an

informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. **At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.** If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83–20, 1983 WL 31249, *2–3 (S.S.A.)(emphasis added). With regard to the last highlighted sentence, " 'should' means 'must.' " *Armstrong,* 160 F.3d at 590; *DeLorme v. Sullivan,* 924 F.2d 841, 848 (9th Cir.1991).

◼ As an initial matter, the ALJ erred when he stated he "has considered Dr. Jim[e]nez's opinions, but does not find the information provided relevant to this case." A.R. 22. To the contrary, " 'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.' " *Lester v. Chater,* 81 F.3d 821, 832 (9th Cir.1995) (quoting *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir.1988)); *see also Flaten v. Sec. of Health & Human Servs.,* 44 F.3d 1453, 1461 & n. 5 (9th cir.1995) ("Retrospective diagnoses by treating physicians and medical experts ... are ... relevant to the determination of a continuously existing disability with onset prior to expiration of insured status."); *Kemp v. Weinberger,* 522 F.2d 967, 969 (9th Cir.1975) (When a disease is known to progress in a slow, degenerative process, evidence of medical deterioration can be probative of a patient's condition at

---

**5.** Social Security Rulings constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations. *Chavez v. Dep't of Health & Human Servs.,* 103 F.3d 849, 851 (9th Cir.1996); *Quang Van Han v. Bowen,* 882 F.2d 1453, 1457 (9th Cir.1989). Although Social Security Rulings do not have the force of law, *Chavez,* 103 F.3d at 851, once published, they are binding upon ALJs and the Commissioner. *Holohan v. Massanari,* 246 F.3d 1195, 1202–03 n. 1 (9th Cir.2001); *Gatliff v. Comm'r of the Soc. Sec. Admin.,* 172 F.3d 690, 692 n. 2 (9th Cir.1999).

an earlier time). Moreover, "[i]f the 'medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83–20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.'" *Armstrong*, 160 F.3d at 590 (quoting *DeLorme*, 924 F.2d at 848).

In light of the foregoing, and in order "to fully and fairly develop the record and to assure that the claimant's interests are considered[,]" *Smolen*, 80 F.3d at 1288 (internal quotation marks, citation omitted); *see also Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir.1992) (per curiam) ("We have long recognized that the ALJ is not a mere umpire at [an administrative hearing], but has an independent duty to fully develop the record...."), it was especially important for the ALJ to, at a minimum, obtain the testimony of a medical advisor. Yet, "the ALJ made the inference regarding the date of onset in favor of the government without the expertise of a medical advisor, required by SSR 83–20. Because the ALJ's onset date determination was made without a 'legitimate medical basis,' it cannot stand." *Morgan*, 945 F.2d at 1083; *Armstrong*, 160 F.3d at 590–91.

**V**

When the Commissioner's decision is not supported by substantial evidence, the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir.2002). "[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th

Cir.), *cert. denied*, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000).

Here, remand is appropriate so "the ALJ [can] create a record which forms a basis for th[e] onset date. The ALJ can fulfill this responsibility by calling a medical expert or where medical testimony is unhelpful, explor[e] lay evidence[,] including the testimony of family, friends, or former employers to determine the onset date."[6] *Armstrong*, 160 F.3d at 590.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is granted and the defendant's request for relief is denied; and (2) the Commissioner's decision is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

**JUDGMENT**

IT IS ADJUDGED that Judgment be entered remanding the action to the Social Security Administration for further proceedings consistent with the Opinion, pursuant to sentence four of 42 U.S.C. § 405(g).

---

**6.** As such, this Court need not address the other issues plaintiff raises, none of which require greater relief than granted, and each of which can be appropriately addressed on remand.