**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LAURIE L. WELLINGTON,
*Plaintiff-Appellant*,

v.

NANCY A. BERRYHILL, Acting
Commissioner Social Security,
*Defendant-Appellee.*

No. 16-15188

D.C. No.
1:14-cv-01207-
SMS

OPINION

Appeal from the United States District Court
for the Eastern District of California
Sandra M. Snyder, Magistrate Judge, Presiding

Argued and Submitted September 14, 2017
San Francisco, California

Filed December 29, 2017

Before: Ronald M. Gould and Paul J. Watford, Circuit
Judges, and W. Louis Sands,* District Judge.

Opinion by Judge Gould;
Dissent by Judge Watford

---

*The Honorable W. Louis Sands, United States District Judge for
the Middle District of Georgia, sitting by designation.

## SUMMARY[**]

### Social Security

The panel affirmed the district court's order affirming the Social Security Administration Commissioner's denial of a claimant's application for Social Security Disability Insurance benefits and partial denial of the claimant's application for Supplemental Security Income benefits.

The panel rejected claimant's contention that Social Security Ruling ("SSR") 82-30 required the administrative law judge ("ALJ") to call a medical advisor at the hearing to help determine claimant's disability onset date. The panel held that under ordinary circumstances, an ALJ was equipped to determine a claimant's disability onset date without calling on a medical advisor. The panel held that because the record was adequate even before claimant saw a mental health specialist and no reasonable medical expert could have inferred that her disability began before May 2010, SSR 83-20 did not require the ALJ to consult a medical advisor before determining claimant's disability onset date.

Judge Watford dissented. Because the evidence was ambiguous as to when claimant's impairments became disabling, Judge Watford would hold that the ALJ erred in determining that the record conclusively supported May 26, 2010 as the date claimant's impairments became severe enough to prevent her from engaging in substantial gainful

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

activity; and he would remand for the ALJ to appoint a medical advisor in the case.

## COUNSEL

Lawrence D. Rohlfing (argued), Santa Fe Springs, California, for Plaintiff-Appellant.

Elizabeth Firer (argued) and Marcelo Illarmo, Special Assistant United States Attorney; Deborah Lee Stachel, Regional Chief Counsel, Region IX; Phillip A. Talbert, Acting United States Attorney; Social Security Administration, San Francisco, California; for Defendant-Appellee.

## OPINION

GOULD, Circuit Judge:

Laurie Wellington appeals from the district court's order affirming the Social Security Administration Commissioner's denial of her application for Social Security Disability Insurance benefits and partial denial of her application for Supplemental Security Income benefits. The Administrative Law Judge concluded that Wellington was not disabled until May 26, 2010, after both the period in which she was insured for SSDI benefits and the date on which she applied for SSI benefits. On appeal, Wellington contends that the ALJ erred by not calling a medical advisor at the hearing to help determine the onset date of her disabilities. We reject this contention and we affirm.

# I

Wellington experienced psychological trauma throughout her life. As a child, she suffered chronic sexual abuse and shielded her younger siblings from domestic violence at home. As an adult, she was regularly beaten by an ex-boyfriend over the course of eight years, was emotionally abused by her ex-husband during their twelve-year relationship, and was stalked by this ex-husband after their divorce. Wellington has been diagnosed with post-traumatic stress disorder and an unspecified anxiety disorder.

Wellington has several physical ailments as well. She primarily suffers from chronic muscle pain, and she was diagnosed with fibromyalgia in 2009. She also has a history of back pain and chest pain, and some less serious conditions.

Despite her psychological and physical impairments, Wellington was able to lead a productive life for many years. She dropped out of high school and apparently did not work in her 20s, but she obtained her GED at age 32. She then completed a nine-month college program in medical assisting and worked as a certified nursing assistant for three years until she hurt her back. The extent of this injury is not clear from the record, but Wellington stayed out of the work force for six years. In 2005, she returned to work as a cashier at a convenience store, where she worked for two and a half years. Wellington kept this job until she was required to work 50-hour weeks, which aggravated her back pain. She then worked part-time at a department store for eight months.

In December 2008, however, Wellington repeatedly took medical leave and was fired from her department store job

when she did not return to work. In the month before she was fired, Wellington went to the emergency room eight times, and on one occasion admitted herself for a three-day inpatient stay. She appeared anxious or complained of anxiety-related symptoms in half of these visits, while the other visits involved treatment for vertigo, migraine headaches, or abdominal pain.

In the month after losing her job, Wellington went back to the emergency room four times, again exhibiting or complaining of anxiety in half of these visits while seeking unrelated treatment—for vertigo, ringing in her ears, and arm numbness—in the rest. An emergency doctor gave Wellington a prescription for Xanax to manage her anxiety, and she did not return to the ER for a month afterward. In the next visit she said her anxiety was "better now" and she was treated for acute vomiting. Wellington returned a week later requesting more Xanax and appearing anxious. She ran out of medication three weeks later and again went back to the emergency room, where she was prescribed a different drug.

On March 16, 2009, Wellington went to a health center for the first time on record and was given a two-month Klonopin prescription. Subsequent medical records show routine treatment of her anxiety disorder. Wellington received a one-month refill of Klonopin in May, but the prescription was not renewed at her appointment the following month. Wellington requested and received another one-month refill in July. But the prescription again was not renewed the following month. Wellington complained of increased life stressors and anxiety in September, so she received a stronger prescription that was increased once more in October. The prescription was decreased in December when Wellington had no complaints

of anxiety, and it was not renewed in January 2010, the last record from this office. These treatment notes indicate that Wellington "doesn't like taking medication," though she recognized that her prescriptions did "help with the pain and the anxiety."

Wellington first saw a specialist for her mental health troubles on May 26, 2010. Dr. Cushman described Wellington as moderately anxious, but he noted that she last took a leftover Klonopin a month ago and that "[s]he does find it helpful in managing her anxiety." He concluded that Wellington will "have difficulties with regular attendance and consistent participation at this time, with complaints of pain, anxiety and malaise." Still, Dr. Cushman assigned Wellington a Global Assessment of Functioning ("GAF") score of 55, indicating that he believed Wellington had only moderate psychological symptoms.[1] Dr. Cushman also noted that Wellington would benefit from counseling.

Wellington took a turn for the worse over the next several months. She began seeing a therapist in June, and in July she reported that she was having more panic attacks because her ex-husband was trying to contact her. In August, Wellington was tearful during most of her counseling session, and she described being emotionally overwhelmed because her father had developed terminal cancer, other family members were not getting along, and she recently had to put her dog down. Wellington was advised to restart Klonopin and was given a new

---

[1] The Social Security Administration has said that GAF scores "should be considered as medical opinion evidence under 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2) if they come from an acceptable medical source." *Soc. Sec. Disab. Claims Handbook* § 2:15 n.40 (citing AM-13066 REV).

prescription. Her father passed away the following month. At her next counseling appointment, Wellington showed up in a robe, pajamas, and hospital slippers, and she would not make eye contact. In December, Wellington reported that "everything got worse" after her father died. The next month, January 2011, the therapist observed that Wellington's depression was only getting worse and that her anxiety had reached new heights.

Wellington filed for SSDI and SSI benefits on December 24, 2009, alleging a disability onset date of December 24, 2008. Her date last insured for SSDI was December 31, 2008. Wellington's claims were initially denied, but after an appeal and voluntary remand, an ALJ issued a partially favorable decision. The ALJ found that Wellington's disability onset date was May 26, 2010, making her ineligible for SSDI but eligible for SSI from that date forward. The ALJ determined Wellington's disability onset date without calling a medical expert at the hearing. He reasoned that medical records beginning on this date—with Dr. Cushman's psychological examination—showed that Wellington became unable to complete a normal workday up to seven days a quarter due to pain and anxiety. The district court affirmed the ALJ's decision, and Wellington appeals.

## II

We review *de novo* the district court's order affirming the Commissioner's denial of benefits. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). We will affirm the Commissioner's decision unless it is not supported by substantial evidence or is based on a legal error. *Id.*

## III

On appeal, Wellington contends that the ALJ erred by finding that her disability began the day she was examined by Dr. Cushman. She argues that Social Security Ruling ("SSR") 82-30 required the ALJ to call a medical advisor at the hearing to help determine her disability onset date. We disagree.

## A

The onset date of a disability can be critical to an individual's application for disability benefits. A claimant can qualify for SSDI only if her disability begins by her date last insured, and these benefits can be paid for up to 12 months before her application was filed. *See* 42 U.S.C. § 423(a)(1), (c)(2), (d)(1)(A). In contrast, a claimant is eligible for SSI once she becomes disabled, but she cannot receive benefits for any period before her application date. *See* 42 U.S.C. §§ 1382(c)(2), (c)(7), 1382c(a)(3)(A). For both programs, the onset date is the date when the claimant is unable to engage in any substantial gainful activity due to physical or mental impairments that can be expected to last for at least 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

As we recently explained in *Diedrich v. Berryhill*, "[t]he ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it." 874 F.3d 634, 638 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin,* 775 F.3d 1090, 1098 (9th Cir. 2014)). "But in circumstances where the ALJ must determine the date of disability onset and medical evidence from the relevant time period is unavailable or inadequate, Social Security Ruling ("SSR") 83-20 states that the ALJ should call a medical advisor." *Id.* SSR 83-20 provides:

Medical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability. The medical evidence serves as the primary element in the onset determination. . . .

With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

. . . .

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law

> judge (ALJ) should call on the services of a
> medical advisor when onset must be inferred.

SSR 83-20, 1983 WL 31249, at *2–3.

Although Social Security Rulings do not carry the "force of law," they are nevertheless binding on ALJs. *Molina v. Astrue*, 674 F.3d 1104, 1113 n.5 (9th Cir. 2012). These Rulings "reflect the official interpretation of the [Social Security Administration] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." *Id.* (citation omitted).

Our cases have given some guidance as to situations in which SSR 83-20 requires an ALJ to seek a medical advisor's help before determining a claimant's disability onset date.

In *DeLorme v. Sullivan*, 924 F.2d 841 (9th Cir. 1991), we considered the case of a man with long-term disabling depression. *Id.* at 844. Although DeLorme's incapacitating depression was not diagnosed until he belatedly saw a mental health specialist, it was "possible that the depression diagnosed [then] might be found to have an onset date at some other time prior to the expiration of insured status" two years earlier. *Id.* at 847–49. We held that on these facts, "SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." *Id.* at 848.

Similarly, in *Morgan v. Sullivan*, 945 F.2d 1079 (9th Cir. 1991), we reversed the ALJ's determination of the onset date of the claimant's mental disorders because the ALJ did not consult a medical advisor. *Id.* at 1082–83. While the claimant's mental disability may have been triggered by a

hernia operation in 1977, the "first unambiguous evidence in the record of a mental impairment" occurred only in January 1980, when he was treated at a clinic for anxiety and then referred to a counselor. *Id.* at 1081–82. Then in March 1980 a rheumatologist characterized the claimant as "nearly incapacitated by severe depression and chronic anxiety." *Id.* at 1082. Examinations in 1984 revealed possible schizophrenia, which was confirmed in 1985. *Id.* On this record the panel thought hospital visits in 1979 showed "perhaps early evidence of progressive mental illness," and that there were "indications that Morgan's mental condition was disabling prior to December 31, 1979," his date last insured for SSDI. *Id*. at 1082.

Next, in *Armstrong v. Commissioner of Social Security*, 160 F.3d 587 (9th Cir. 1998), we held that the ALJ was required to call a medical advisor to assist in determining the onset date where "Armstrong's depression could have been disabling long before" it was diagnosed. *Id.* at 590. After his wife left him in 1986, Armstrong began drinking alcohol excessively, living in his truck, and recycling aluminum cans to gain income. *Id.* at 588. In 1991 or 1992, he began suffering crying spells. *Id.* at 590. So even though Armstrong was not diagnosed with mental health disorders until 1994, a medical expert could have helped the ALJ infer a disability onset date before Armstrong's date last insured in 1992. *Id.* at 588–89.

Finally, in *Diedrich v. Berryhill* we held that the Social Security Commissioner erred by not calling a medical advisor at the hearing to help determine the precise onset date of Diedrich's disability under the circumstances there presented. 874 F.3d at 639. The majority reasoned that SSR 83-20 required a medical advisor because there were large gaps in the medical records documenting slow progress of

illness; "the alleged onset and the date last worked are far in the past"; and the ALJ's assessment of the disability onset date would have been "mere speculation without the aid of a medical expert." *Id.* at 638–39.

Throughout our cases, we have observed that "SSR 83-20 only requires that the ALJ assist the claimant in creating a complete record . . . which forms a basis for [the] onset date." *Armstrong*, 160 F.3d at 590; *see also DeLorme*, 924 F.2d at 849. The ALJ must develop an incomplete record by calling on a medical advisor when "medical evidence from the relevant time period is unavailable or inadequate." *Diedrich*, 874 F.3d at 638. This requirement most readily applies when an incomplete record clearly could support an inference that a claimant's disability began when there were no contemporaneous medical records. *See, e.g.*, *DeLorme*, 924 F.2d at 847, 851 (holding that "the ALJ must fully develop the record" when the first examination by a psychiatrist documented a "*long term* functional nonpsychotic disorder" preventing the claimant from working). Because SSR 83-20 applies when "it may be possible" to infer disability onset during a significant gap in the medical records, the ALJ should also enlist a medical expert's help when "the evidence is ambiguous regarding the possibility that the onset of her disability occurred" at that time. *Grebenick v. Chater*, 121 F.3d 1193, 1201 (8th Cir. 1997).

In those circumstances, "an ALJ's assessment of the disability onset date would be mere speculation without the aid of a medical expert." *Diedrich*, 874 F.3d at 639. "The requirement that, in all but the most plain cases, a medical advisor be consulted prior to inferring an onset date is merely a variation on the most pervasive theme in administrative law—that substantial evidence support an agency's

decisions." *Bailey v. Chater*, 68 F.3d 75, 80 (4th Cir. 1995). Under SSR 83-20, "medical advisors are the prescribed mechanism for reaching the required evidentiary threshold." *Id.*

## B

Although in our prior cases we concluded that a medical advisor's appointment was necessary, we decline to do so here.  Under ordinary circumstances, an ALJ is equipped to determine a claimant's disability onset date without calling on a medical advisor.  We conclude that this case does not present the unusual circumstances envisioned by SSR 83-20, and so the ALJ did not err by determining Wellington's onset date without calling on a medical advisor.

Wellington contends that SSR 83-20 applies under our case law because her onset date could be retroactively inferred before the date of Dr. Cushman's examination.  The first hospital visit that could potentially cast a shadow of disability back in time is the first relevant examination by a qualified examiner.  *See Morgan*, 945 F.2d at 1081–82; *DeLorme*, 924 F.2d at 843–44, 849.  Accordingly, the date of Dr. Cushman's psychological examination could trigger SSR 83-20's requirements because this was the first examination by a doctor with expertise in mental health problems.  Although Wellington was previously seen many times by emergency room physicians and health center medical providers, none of these doctors was specially trained to evaluate mental health, nor did any of these doctors rigorously evaluate Wellington's psychological impairments.

Here, the ALJ did not violate SSR 83-20 by finding that Wellington's disability onset date coincided with the date of Dr. Cushman's examination.  An ALJ need not call on a

medical advisor when the available evidence clearly could not support an inference of disability onset during a gap in the medical records. After all, "[t]he Ruling's language does not expressly mandate that the ALJ consult a medical advisor in every case where the onset of disability must be inferred." *Bailey*, 68 F.3d at 79.

SSR 83-20 does not apply when the record has no meaningful gaps. A medical advisor is not required when, despite some inadequacies, "a relatively complete medical chronology" of the claimant's condition during the relevant time period is available. *Pugh v. Bowen*, 870 F.2d 1271, 1278 & n.9 (7th Cir. 1989). In these situations, the ALJ's duty to develop the record is discharged. *See Armstrong*, 160 F.3d at 590; *DeLorme*, 924 F.2d at 849.

Also, a medical advisor is unnecessary when, based on "the nature of the impairment (i.e., what medical presumptions can reasonably be made about the course of the condition)," an ALJ can reasonably and confidently say that no reasonable medical advisor could infer that the disability began during a period for which the claimant lacked medical documentation. SSR 83-20, 1983 WL 31249, at *3.

Both of those exceptions from to SSR 83-20 apply here. The available records, tracking about three dozen encounters with medical providers, give an adequate chronology of Wellington's mental health during the seventeen-month period between her alleged onset date and first psychological examination. These visits occurred at least once every two months, except for a three-month gap from February to April 2010 that ended with visits in which Wellington reported and displayed no anxiety. Although her medical providers were not mental health professionals, they recognized and treated her anxiety. Despite the lag between Wellington's alleged

onset date and the date she was examined by a specialist, there are not so few relevant medical records on file as to evoke the ALJ's duty to develop the record under SSR 83-20.

Moreover, the nature of Wellington's anxiety disorder is such that a medical expert could not reasonably infer that she became disabled for the purposes of SSDI or SSI before May 2010. To be eligible for SSDI, a claimant's disability must "be continuously disabling from the time of onset during insured status to the time of application for benefits." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1460 (9th Cir. 1995). Eligibility for SSI similarly requires continuous disability after a claimant's onset date. *See* 42 U.S.C. § 1382c(a)(3)(A). The record at the time of Wellington's application reflected that her lifelong chronic anxiety disorder was exacerbated by stress and responded well to treatment. Her disability finding was based on record evidence, beginning with Dr. Cushman's consultative psychological evaluation, the first examination showing significant mental limits. After that examination her disorder got worse so that even with treatment, unmitigated pain and anxiety were expected to keep her from completing a normal workday up to seven days a quarter. But the available evidence before then contradicts the possibility that Wellington's anxiety was so severe and persistent as to keep her out of work continuously before May 2010.

The existing medical record does not support the need for a medical advisor because SSR 83-20 states that even when onset of a disability can be inferred, that judgment requires a "legitimate medical basis." SSR 83-20, 1983 WL 31249, at *3. We recognize that Wellington had experienced several distressing panic attacks in December 2008. But just a few months later, the record shows that Wellington's

disabling symptoms had all but disappeared. In March 2009, Wellington began treatment at a health center and stopped going to the emergency room. From this time until the end of her treatment records in January 2010, Wellington's medical provider prescribed anti-anxiety medication and commented in their records about her good progress on the drug. The provider renewed the prescription as needed, discontinuing the medication three times when Wellington's symptoms faded to the point that she did not need it anymore. In January 2010, after Wellington's last prescription ended, she did not complain of anxiety or appear to be anxious at her regular appointment or at two visits to the emergency room that month for neck pain and bronchitis. The next medical records in May 2010 indicate muscle pain without anxiety early in the month, followed by an anxiety attack on May 23 and Dr. Cushman finding her anxious three days later. Given the increasing severity of Wellington's symptoms and their resistance to treatment in subsequent months, substantial evidence supports the ALJ's finding that May 2010, when Dr. Cushman examined Wellington and when the ALJ determined disability onset, stands as an important change in the course of her disorder, after which she could no longer attend work reliably.

Symptoms may wax and wane during the progression of a mental disorder. *See, e.g.*, *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Those symptoms, however, may also subside during treatment. "With adequate treatment some individuals with chronic mental disorders not only have their symptoms and signs ameliorated, but they also return to a level of function close to the level of function they had before they developed symptoms or signs of their mental disorders." 20 C.F.R. pt. 404, subpt. P, app. 1 (2014). Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability. *See*

20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1). That is what happened here until May 2010.

Because the record was adequate even before Wellington saw a mental health specialist and no reasonable medical expert could have inferred that her disability began before May 2010, we conclude that SSR 83-20 did not require the ALJ to consult a medical advisor before determining Wellington's disability onset date.

## IV

We hold that the ALJ did not err by finding Wellington's disability onset date without calling on a medical advisor at the hearing.

**AFFIRMED.**

WATFORD, Circuit Judge, dissenting:

I agree with the court's discussion of the legal principles that govern resolution of this appeal, but I disagree with the ultimate disposition in this case. As the court explains in section III.A, SSR 83-20 requires an ALJ to appoint a medical advisor to assist in determining a claimant's disability onset date in either of two situations: (1) when there is a meaningful gap in the medical records; or (2) when the medical records are complete, but the available evidence is nonetheless ambiguous as to the onset date. While there is no significant gap in Nancy Wellington's medical records, in my view the evidence is ambiguous as to when her anxiety, depression, and post-traumatic stress disorder became disabling. As a result, I think the ALJ was required to appoint a medical advisor here.

Evidence in the record supports a disability onset date before May 26, 2010. In the six weeks leading up to December 24, 2008, when Wellington contends she became disabled, she visited the emergency room 11 times. In all of those visits, Wellington complained of, exhibited signs of, or was diagnosed with anxiety. During 2009, Wellington visited the emergency room six more times due at least in part to her anxiety and other mental disorders. During at least eight additional medical visits in 2009, doctors also noted and treated her anxiety. Her doctors increased her anxiety medication dosage at least three times over the course of that year. And on May 4, 2010, Wellington was admitted for a multi-day inpatient hospital stay related to anxiety, followed by an anxiety attack on May 23 and Dr. Cushman's examination on May 26. This evidence demonstrates that Wellington continually struggled with her mental impairments for at least a year and a half before the date the ALJ determined her disability began.

Because the evidence is ambiguous as to when Wellington's impairments became disabling, I think the ALJ erred in determining that the record conclusively supports May 26, 2010, as the date Wellington's impairments became severe enough to prevent her from engaging in substantial gainful activity. *See* SSR 83-20, 1983 WL 31249, at *3. I would remand for the ALJ to appoint a medical advisor in this case.