NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

DEC 7 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PAMELA GILLEN-TOWNSLEY,

Plaintiff-Appellant,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant-Appellee.

No.    20-35286

D.C. No. 2:18-cv-00889-JO

MEMORANDUM*

Appeal from the United States District Court
for the District of Oregon
Robert E. Jones, District Judge, Presiding

Submitted November 10, 2021**
Portland, Oregon

Before:  GRABER and CHRISTEN, Circuit Judges, and WU,*** District Judge.

Pamela Gillen-Townsley appeals the district court's order affirming the

denial of her claim for disability insurance benefits under Title II of the Social

---

*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

**       The panel unanimously concludes this case is suitable for decision without oral argument.  See Fed. R. App. P. 34(a)(2).

***      The Honorable George H. Wu, United States District Judge for the Central District of California, sitting by designation.

Security Act, which she filed on November 8, 2013. Although the administrative law judge ("ALJ") assessed both Gillen-Townsley's physical and mental health impairments in finding her not disabled, on appeal Gillen-Townsley focuses only on the ALJ's findings as to her mental health limitations. We review the district court's affirmance of the ALJ's denial of Social Security benefits de novo and set aside the denial only if it is not supported by substantial evidence or if the decision is based on legal error. *See Ford v. Saul*, 950 F.3d 1141, 1153-54 (9th Cir. 2020). Because the parties are familiar with the facts, we do not recite them here.

Addressing Gillen-Townsley's proffered issues on appeal in turn, first, the ALJ provided "specific and legitimate" reasons for giving little weight to the "8/2/16" opinion letter completed by Physician Assistant Haley Halleman and signed – *after* the hearing – by Dr. John H. Phillips (Halleman's supervising physician). Both parties acknowledge that Halleman was not an "acceptable medical source."[1] The ALJ observed that there was no indication that Halleman specialized in mental health treatment. The ALJ also noted, and Gillen-Townsley conceded, that the record lacked any evidence that Dr. Phillips had ever treated or

[1] For claims filed before March 27, 2017, licensed physician assistants are not considered "acceptable medical sources" under the Social Security Act. *See* 20 C.F.R. § 404.1502(a)(8). As to pre-March 27, 2017 claims, an ALJ may discount the opinion of a physician assistant, if the ALJ provides germane reasons for so doing. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds*.

examined her. Further, the ALJ referenced other specific evidence in the record for discounting Halleman's conclusions including: (1) in "treatment records . . . the claimant is generally described as having normal attention and concentration even when reporting increased mental health symptoms," (2) Dr. Robert Weniger's "5/12/2014" neuropsychological evaluation (discussed, *infra*), and (3) a post-hearing psychological consultative examination by Dr. David Starr that reported Gillen-Townsley as being "a well oriented woman who could pay attention, remember, and follow directions . . . can think abstractly and make good judgments."[2]

Second, Gillen-Townsley contends that the ALJ misinterpreted Dr. Weniger's neuropsychological evaluation in determining her residual functional capacity ("RFC") and failed to specifically address certain of her limitations referenced in that evaluation. Dr. Weniger did recognize that Gillen-Townsley exhibited a number of psychiatric and social challenges in the work environment (e.g., she "will experience considerable difficulty interpreting and responding effectively to workplace interpersonal demands"); but when he did so, he also provided recommendations to reduce the impact of such conditions (e.g., "[a]

---

[2] The ALJ disagreed with Dr. Starr's evaluations in some areas (e.g., his failure to find Gillen-Townsley had "at least a moderate level of impairment with regard to social functioning," persistence, and pace) and for that reason assigned his assessment "only some weight."

relatively small and quiet work setting may be helpful" and "provision of brief breaks on an 'as-needed' basis will also be helpful"). Moreover, Dr. Weniger never concluded that Gillen-Townsley had a severe mental disability that would preclude her from working, and, in fact, observed that she "appeared to possess the intellectual, cognitive, and academic skills to perform a relatively broad range of vocational activities." The ALJ reviewed and commented on Dr. Weniger's evaluation but did so in the context of the overall evidence of Gillen-Townsley's mental condition – including her objective treatment record, the state agency medical consultant assessments and, "to a certain extent," Dr. Starr's report. Further, in finding that Gillen-Townsley had the RFC to perform "light work," the ALJ incorporated restrictions suggested by Dr. Weniger as a means of eliminating workplace stressors and challenges.[3]

Finally, the ALJ provided "specific, clear and convincing reasons" supported by substantial evidence in the record for discounting Gillen-Townsley's subjective symptom testimony regarding her mental health impairments. *Garrison v. Colvin*,

---

[3] As stated by the ALJ:

> The claimant is further limited to routine and repetitive tasks, though not at a production-rate pace, she is limited to simple work-related decisions utilizing judgment and dealing with changes in the work setting, and she is limited to only occasional interaction with others. Finally, the claimant would be off task up to 5 percent of an 8-hour workday in addition to normal breaks.

759 F.3d 995, 1014-15 (9th Cir. 2014). That testimony briefly covered her feeling "overwhelmed," "anxiety, panic attacks," and depression. While the ALJ found evidence as to those conditions, he held that "the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria" in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A § 12.00 (Mental Disorders). In reaching that conclusion, the ALJ relied upon: (1) some of Gillen-Townsley's self-described daily activities – including helping her daughters with homework, driving, doing housework, attending church, going to Hot Springs, having a boyfriend, and seeing friends – which contradicted certain of her alleged symptoms and/or their severity; (2) the "function reports" and progress notes in her medical records, which did not indicate any long-lasting and severe mental impairments but rather described waxing and waning-type symptoms which were correlated to situational stressors such as the divorce from her husband, living independently for the first time, arrest for DUI (alcohol related), etc.; (3) her lack of significant prior mental health treatment and her subsequent improvement when placed on medication and anti-depressants as well as commencing individual therapy; (4) her consistently scoring in only the "moderate symptoms or difficulties" range of the Global Assessment of Functioning ("GAF") test;[4] (5) Dr.

---

[4] A GAF score is merely "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). Although GAF

5

Weniger's evaluation, which found *inter alia* that Gillen-Townsley "did not exhibit cognitive weaknesses of sufficient breadth or severity to support a diagnosis of a cognitive disorder;" and (6) Dr. Starr's conclusion that, while he diagnosed her as having a "bipolar disorder," it was only "mild to moderate" and that "she is able to think abstractly, make good judgments, and is capable of managing her funds."

**AFFIRMED.**

---

scores in isolation are insufficient to determine a patient's level of functioning, *Garrison*, 759 F.3d at 1002 n.4, the Social Security Administration has indicated that they "'should be considered as medical opinion evidence under 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2) if they come from an acceptable medical source.' *Soc. Sec. Disab. Claims Handbook* § 2:15 n.40 (citing AM-13066 REV)." *Wellington v. Berryhill*, 878 F.3d 867, 871 n.1 (9th Cir. 2017).