NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

OCT 20 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

CHRISTINA STEPHENS,

          Plaintiff-Appellant,

v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

          Defendant-Appellee.

No.   22-35998

D.C. No. 1:20-cv-02137-IM

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Karin J. Immergut, District Judge, Presiding

Submitted October 18, 2023[**]
Portland, Oregon

Before:  KOH and SUNG, Circuit Judges, and EZRA,[***] District Judge.

Christina Stephens appeals the district court's decision affirming the

Administrative Law Judge's (ALJ) denial of her application for Social Security

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

Disability Insurance (SSDI) and Supplemental Security Income (SSI). On appeal, Stephens contends that the ALJ improperly discounted (1) Stephens's subjective symptom testimony, (2) Dr. Eckerd's medical opinion, and (3) lay witness testimony from Stephens's mother and boyfriend. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1.  The ALJ provided clear and convincing reasons to discount Stephens's subjective symptom testimony. *See Smith v. Kijakazi*, 14 F.4th 1108, 1112 (9th Cir. 2021) (holding that when there is no evidence of malingering, an ALJ may "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so" (citation omitted)).

With regard to Stephens's mental health related limitations, Stephens testified that her anxiety was so severe that she was unable to leave her house without the assistance of her family and the thought of leaving her house gave her panic attacks. She also argues that she has "significant deficits in her ability to concentrate, remain in the workplace for a full day, and handle social interactions with supervisors, coworkers, and the public." The ALJ reasonably discounted Stephens's testimony because many of Stephens's mental health related symptoms were controlled by medication. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (holding that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability"). Furthermore, the ALJ reasonably

2

discounted Stephens's testimony because, during the period of disability, Stephens engaged in multiple social activities, including going to a party at a cousin's house, going out with family and friends, going fishing, dating, attending college full time, and driving to California to visit her father, that undermined the alleged severity of her symptoms. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (explaining that an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms").

With regard to Stephens's physical limitations, Stephens claimed that she was unable to "stand or sit" for more than 15 minutes at a time. The ALJ reasonably discounted Stephens's testimony because Stephens's neuropathy, back problems, and complaints of pain were largely controlled by medication. *See Wellington*, 878 F.3d at 876. The ALJ found that Stephens's symptoms also improved after her bariatric surgery and that Stephens generally presented to her examinations with "no acute distress," "a normal gait and station, and normal strength and muscle tone." Further, although Stephens alleged her neuropathy was "debilitating," medical testing showed only "mild to moderate neuropathy." Finally, the ALJ reasonably concluded that the alleged severity of Stephens's physical symptoms was inconsistent with the "objective evidence and [Stephens's] level of activity" during the period of disability, which included feeding her pets, preparing simple meals, driving a car, performing household repairs, mowing, and shopping. *See*

3

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (holding that because "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations … only if [claimants'] level of activity were inconsistent with [their] limitations would [daily] activities have any bearing on [their] credibility" (citation omitted)).

2. Substantial evidence supports the ALJ's discounting of Stephens's medical evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (explaining that under the new regulations, the ALJ "must articulate how persuasive [he] finds all of the medical opinions from each doctor . . . and explain how [he] considered the supportability and consistency factors in reaching these findings" (cleaned up) (quoting 20 C.F.R.§ 404.1520c(b))). Here, the ALJ discounted Dr. Eckerd's opinion for two reasons: (1) the limitations were supported only by Stephens's subjective complaints, which, as discussed above, the ALJ properly rejected as inconsistent with the record and Stephens's daily activities, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." (citation omitted)), and (2) the severity of limitations was inconsistent with objective medical evidence.

Dr. Eckerd's opinion that full-time employment would be Stephens's "breaking point" and would result in Stephens "descending into intense, paralyzing anxiety

and panic attacks" was not reflected in Dr. Eckerd's treatment notes, which regularly described Stephens as "cooperative and pleasant," "appropriate[ly] dress[ed] and groom[ed]" and "engaged." Additionally, the ALJ did not take these statements out of context. The ALJ reasonably explained that Dr. Eckerd's severe limitations regarding Stephens's social functioning were unsupported by the level of Stephens's daily activities and the psychiatric signs observed by her medical providers. That Stephens would have us place less weight on the observed psychiatric signs is insufficient to find that the ALJ's decision is not supported by substantial evidence. *See Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince.").

The ALJ also did not err in crediting Dr. Peterson's opinion while discounting Dr. Eckerd's opinion. Although the medical opinions of both physicians were similar in some respects, Dr. Peterson, unlike Dr. Eckerd, did not state that Stephens was unable to maintain full-time employment. Rather, Dr. Peterson opined that Stephens "suffers from multiple conditions that impact her ability to work full-time," and the symptoms caused by these conditions were "more likely to occur with stress, and prolonged interaction with people and a work environment." The ALJ accepted Dr. Peterson's opinion and accounted for these conditions in setting Stephens's residual functional capacity.

3. The ALJ considered but did not articulate how he evaluated Stephens's mother's and boyfriend's lay witness testimony. *See* 20 C.F.R. §§ 404.1520c(d), 416.920c(d) (providing that an ALJ is "not required to articulate how [he] considered evidence from nonmedical sources"). Stephens argues that the ALJ's failure to provide reasons for discounting these lay witnesses was error. We have not yet addressed whether under the new regulations an ALJ is still required to provide germane reasons for discounting lay witnesses. However, we need not decide this issue because any error in not addressing these lay witnesses' testimony was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" (citation omitted)).

Both Stephens's mother and her boyfriend provided statements that were similar to Stephens's subjective complaints, which the ALJ reasonably rejected as discussed above. Therefore, the ALJ's rejection of the lay witnesses' statements was also reasonable. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that when "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints," "it follows that the ALJ also gave germane reasons for rejecting [lay witness] testimony" that "was similar to such complaints").

4. Because substantial evidence supports the limitations set forth by the ALJ in setting Stephens's residual functional capacity, the hypotheticals posed to the vocational expert were proper and the ALJ did not err in relying upon them. *See Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014) ("An ALJ may rely on a vocational expert's testimony that is based on a hypothetical that contains all of the limitations that the ALJ found credible and supported by substantial evidence in the record." (cleaned up)).

**AFFIRMED.**