NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 6 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

---

MATTHEW M. LEECH,

Plaintiff - Appellant,

v.

FRANK BISIGNANO, Commissioner of
Social Security,

Defendant - Appellee.

No. 24-5218

D.C. No.
3:23-cv-05639-GJL

MEMORANDUM[*]

---

Appeal from the United States District Court
for the Western District of Washington
Grady J. Leupold, Magistrate Judge, Presiding

Submitted November 4, 2025[**]
Portland, Oregon

Before: M. SMITH, NGUYEN, and H.A. THOMAS, Circuit Judges.

Matthew M. Leech appeals the district court's decision affirming the

Commissioner of Social Security's denial of his application for disability insurance

benefits. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

1.      We held in *Cody v. Kijakazi* that a claimant succeeding on an Appointments Clause challenge was entitled to an "independent decision issued by a different" Administrative Law Judge ("ALJ") that was not "'tainted' by a pre-ratification ALJ decision." 48 F.4th 956, 963 (9th Cir. 2022). Only with a reassignment will the claimant receive a "fresh look" and "the new hearing to which he is entitled." *Id.* at 962 (citation modified).

Because Cody's requirement of de novo adjudication allows the new ALJ to exclude the testimony taken by the unconstitutionally appointed ALJ, ALJ David Johnson did not err by excluding Leech's testimony from the 2016 and 2017 hearings before ALJ Allen Erickson. Here, ALJ Johnson allowed Leech to testify at two new hearings: an initial hearing in April 2022 and a supplemental hearing in October 2022. This provided Leech with the "fresh look" and "new hearing" that *Cody* contemplates for a claimant with a successful Appointments Clause challenge. *See id.* As the district court noted below, "ALJs take an active role in questioning Social Security claimants during their hearing" so "[p]reventing the new ALJ from considering testimony which may be tainted by an Appointments Clause violation appears consistent with the goal of providing a truly 'fresh look' at the matter."

2.      When evaluating disability applications filed before March 27, 2017, the ALJ must explain the weight he gave to prior administrative medical findings

24-5218

and medical opinions. *See* 20 C.F.R. §§ 404.1527, 416.927. An ALJ "may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010) (quoting *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002), *superseded by regulation* 20 C.F.R. §§ 404.1504, 404.1520(b)(c)(1)).

Here, the ALJ gave the VA rating of 100% service-connected disability "only some weight" because it "fails to make a distinction between [Leech's] functioning when he is taking his medications and not taking his medications as directed/prescribed." The ALJ cited medical evidence that Leech's seizures were well-controlled when his medications were at therapeutic levels. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."). And the ALJ cited medical evidence showing that many of Leech's seizures occurred during periods when he did not take his medications as prescribed. The ALJ also found that Leech's condition improved with the vagus nerve stimulator placement, which undermined the VA's rating. *See Wellington*, 878 F.3d at 876. Because these were "persuasive, specific, [and] valid reasons . . . supported by the record," the ALJ properly gave less weight to the VA's disability rating. *See Turner*, 613 F.3d at 1225.

24-5218

3. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

Here, Dr. Lisa Ho was an examining doctor and the ALJ gave her opinion little weight. Dr. Lauren Frey's opinion contradicted Dr. Ho's opinion, however, and substantial evidence supported the ALJ's finding that Dr. Ho's opinion was "inconsistent with other evidence" regarding Leech's seizures and back pain. *See Garrison*, 759 F.3d at 1012. Dr. Ho opined that Leech's spine condition limited him to sedentary occupations and that he should avoid heavy lifting, but this statement is inconsistent with Leech's "unremarkable treatment history for back pain, as well as normal physical examinations showing intact gait and neurological functioning of the extremities." The ALJ cited evidence that Leech had only conservative treatment for his back pain, showed unremarkable gait at his physical examinations, and demonstrated full range of motion, strength, sensation, and reflexes throughout his extremities.

Dr. Ho also opined that Leech's seizures are "unpredictable" and "not controlled with medication," but these statements are inconsistent with the evidence that Leech had "control of [his] seizures with appropriate medication

use." The ALJ cited evidence in the record that many of Leech's seizures occurred during periods when Leech did not take his medications as prescribed. Because these are "specific and legitimate reasons . . . supported by substantial evidence," the ALJ properly rejected Dr. Ho's opinion. *See Garrison*, 759 F.3d at 1012.

Dr. Philip Gibson was also an examining psychologist, and the ALJ gave his opinion little weight. Dr. Frey's opinion contradicted Dr. Gibson's opinion, however, and substantial evidence supported the ALJ's finding that Dr. Gibson's opinion was "inconsistent with the overall medical evidence" regarding Leech's mental health. *See Garrison*, 759 F.3d at 1012. Dr. Gibson opined that Leech's recent memory is "severely impaired" and that Leech could sustain concentration for about only thirty minutes at a time, had limited social interaction, and had limited adaptive skills. But the ALJ properly determined that this is inconsistent with the record where Leech "endorsed only acute mental health symptoms at times, primarily due to his infant son's passing." The ALJ found that Leech otherwise denied or failed to mention experiencing mental health symptoms to providers, and did not receive any treatment for his mental health concerns during the relevant period. The ALJ further cited Leech's normal presentation and intact comprehension during treatment visits. Because these are "specific and legitimate reasons . . . supported by substantial evidence," the ALJ properly rejected Dr. Gibson's opinion. *See Garrison*, 759 F.3d at 1012.

4.    When evaluating opinions from non-acceptable medical sources, an ALJ "may expressly disregard lay testimony if the ALJ gives reasons germane to each witness for doing so." *Turner*, 613 F.3d at 1224 (citation modified). The ALJ gave nurse practitioner[1] Collette Evrard's opinion partial weight because it was "somewhat consistent with the overall medical evidence" but not consistent with medical evidence regarding Leech's seizure condition. The ALJ cited medical evidence showing Leech's seizures were well-controlled during periods when his medications were at therapeutic levels. *See Wellington*, 878 F.3d at 876. And the ALJ cited medical evidence showing that many of Leech's seizures occurred during periods when he did not take his medications as prescribed.

The ALJ also found that Evrard's opinion regarding Leech's functional limitations and level of absenteeism "appear[ed] to be based on [Leech's] subjective reports" because she was "unable to answer multiple questions given her lack of information regarding [Leech's] functional abilities." And the ALJ found that Evrard's opinion was inconsistent with exam findings showing Leech had normal gait, range of motion, and neurological functioning of the extremities. By providing these germane reasons, the ALJ properly rejected Evrard's opinion. *See Turner*, 613 F.3d at 1224.

---

[1] Nurse practitioners are not defined as an "[a]cceptable medical source" under 20 C.F.R. § 404.1502(a) so Evrard's opinion is treated as lay testimony.

Regarding Melissa Leech's lay observations about her former spouse, the ALJ only gave them partial weight due to inconsistencies with the record. The ALJ found that Ms. Leech's statements "failed to make a distinction regarding the frequency of [Leech's] episodes when taking medications at therapeutic levels." Contrary to Ms. Leech's observations, the ALJ found that Leech's seizures were well-controlled during periods when his medications were at therapeutic levels, and that many of Leech's seizures occurred during periods when he did not take his medications as prescribed. And the ALJ cited evidence that Leech had no side effects from his seizure medications. The ALJ also found that Ms. Leech's statements regarding Leech's physical functional limitations "[we]re not entirely consistent with his normal physical examination findings." By providing the above germane reasons, the ALJ also properly rejected Ms. Leech's lay observations. *See Turner*, 613 F.3d at 1224.

5.      When there is no evidence of malingering, the ALJ must provide "specific, clear, and convincing reasons" for rejecting the claimant's subjective symptoms testimony. *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (internal citation omitted). Here, the ALJ determined that Leech's impairments "could reasonably be expected to cause some of the alleged symptoms

to some degree," but the ALJ discounted Leech's symptom testimony because of inconsistencies with the medical record.

Regarding Leech's seizure testimony, the ALJ found that Leech's seizures were well-controlled when his medications were at therapeutic levels. *See Wellington*, 878 F.3d at 876. The ALJ cited medical evidence showing that many of Leech's seizures occurred during periods when he did not take his medications as prescribed. Because Leech "fail[ed] to follow prescribed treatment" for his seizures at times, the ALJ reasonably discounted his symptom testimony. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). The ALJ also found that Leech's vagus nerve stimulator further lessened his seizures, which undermined his symptom testimony. *See Wellington*, 878 F.3d at 876. And the ALJ found that although Leech testified that his seizure medications caused extreme drowsiness and memory loss, the record showed that Leech reported his medications did not cause any side-effects during the relevant period.

Regarding Leech's back pain testimony, the ALJ cited imaging studies of Leech's lumbar spine which showed benign findings. *See Smartt*, 53 F.4th at 499. And the ALJ cited medical records showing that Leech's back pain was managed effectively with "minimal conservative treatment." *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." (internal

citation omitted)).  Specifically, the ALJ cited minimal physical therapy sessions, a few injections, and cyclobenzaprine.

Regarding Leech's PTSD testimony, the ALJ concluded that the medical record did not support Leech's claims of functional limitations due to mental health problems.  *See Smartt*, 53 F.4th at 499.  Although Leech reported worsening PTSD symptoms, the ALJ found that Leech only "endorsed minimal PTSD symptoms during the consultative psychological examination."  Leech often denied or failed to mention experiencing any mental health issues during his appointments.  The ALJ also found that Leech "did not receive any treatment for his mental health concerns during the relevant period, which includes declining mental health referrals and failing to follow-through with mental health treatment after the initial consultation."  Because declining these referrals and failing to follow through constituted "fail[ure] to seek treatment," the ALJ reasonably discounted Leech's symptom testimony.  *See Orn*, 495 F.3d at 638.  In sum, the ALJ provided clear, convincing reasons to discount Leech's testimony regarding his seizures, back pain, and PTSD.  *See Trevizo*, 871 F.3d at 679; *Smartt*, 53 F.4th at 499 (holding that the standard is "whether the ALJ's rationale is clear enough that it has the power to convince").

6.     Because the ALJ did not err in excluding Leech's testimony from the 2016 and 2017 hearings or in discounting the VA's disability rating, certain

medical opinions, Leech's subjective symptom testimony, and Ms. Leech's lay opinions, the ALJ did not err in determining Leech's residual functional capacity and subsequently that Leech could perform his past relevant work.

**AFFIRMED.**